## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 97-CA-00577-SCT

*STEVEN BAILEY*

*v.*

*SANDRA BAILEY (RUSSELL)*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/07/97 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN R. REEVES |
| ATTORNEYS FOR APPELLEE: | LISA MILNER |
| | TAMMY VOYNIK |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 12/10/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/31/98 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

### INTRODUCTION

¶1. At issue is the question of whether childbirth is a condition warranting a reduction of child support ordered to be paid by the mother to the custodial parent. Finding that the reduction of the mother's monthly obligation was an abuse of discretion, we reverse and remand this case to the Hinds County Chancery Court for further proceedings.

### STATEMENT OF THE CASE

¶2. On December 20, 1993, Steven and Sandra Bailey were divorced on grounds of irreconcilable differences. The chancellor granted Steven and Sandra joint legal custody of the couple's two minor children, with Steven having physical custody. Steven was ordered to provide the children with health insurance, and each parent was ordered to pay one-half of any medical expenses not covered by insurance. Sandra was ordered to pay child support in the amount of $ 300.00 per month beginning December 1, 1993.

¶3. On April 20, 1995, Sandra filed a motion for modification, seeking a change in custody, or alternatively, expanded visitation. The chancellor granted the request for expanded visitation, permitting visitation with the children on Sandra's birthday and on certain Mondays following weekends in which she had visitation with the children.

¶4. On January 17, 1997, Sandra filed a motion for modification of her child support payments, arguing that she would soon go on a 12-week maternity leave following the expected birth of her child. Soon after, Sandra voluntarily terminated her employment. Sandra sought to be relieved of her obligation to pay child support, or alternatively, that the amount of child support be reduced. On April 7, 1997, the Chancellor ordered Sandra's child support obligations reduced from $ 300 per month to $ 140 per month and relieved her from having to make child support payments during the five weeks when the children were making their summer visitation. Steven timely appealed to this Court, assigning the following as error:

> **I. The lower court erred in finding change in circumstances when, after giving birth to another child by her new husband, the Appellee voluntarily quit her job with full knowledge of her financial situation and her court ordered obligation to support her two children by her prior marriage.**

> **II. The lower court erred in finding that there had been a material change in circumstances which was not reasonably anticipated at the time of the final divorce judgment which justifies a modification of the Appellee's child support obligation.**

### STATEMENT OF THE LAW

¶5. The chancellor in this case misapplied Mississippi law, improperly allowing Sandra a reduction in child support obligations after she quit her job to stay home with her new baby. Furthermore, because she entered the court with "unclean hands" Sandra was by law prohibited from receiving a child support modification.

¶6. The clean hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue. *Calcote v. Calcote*, 583 So.2d 197, 199-200 (Miss. 1991). "[A] husband may not petition for modification of the original decree without showing either that he has performed it or that his performance has been wholly impossible. . . . However, a husband may exonerate himself from failure to make alimony or child support payments as ordered, because of his inability to pay, but his evidence must be made with particularity and not in general terms." *Hooker v. Hooker*, 205 So.2d 276, 278 (Miss.1967). Sandra had missed two child support payments (February and March of 1997) when she appeared in court on her motion for modification. She presented no specific evidence of her inability to pay, other than her own decision to quit earning a living. Willful refusal to support one's children is not the same as inability to pay. The chancellor erred in granting Sandra a modification of child support while she was in arrears.

¶7. Even if Sandra were not barred by the clean hands doctrine, the chancellor's decision to allow a reduction of child support payments from a mother deciding to stay home with a new baby was erroneous. One factor that may be considered in determining whether a material change in circumstances has taken place to warrant child support modification is the relative financial condition and earning capacities of the parties. *Caldwell v. Caldwell*, 579 So.2d 543, 547 (Miss. 1991). However, this Court has never previously allowed a reduction in a pre-existing child support obligation due to voluntary termination of

employment. The only time that we faced a similar issue was in ***Tingle v. Tingle***, 573 So.2d 1389 (Miss. 1990). There, the Court found that because the father could have anticipated his entry as a full-time college student at the time of the original hearing, the change in his employment status did not warrant a reduction in his child support obligation. ***Tingle***, 573 So.2d at 1391-92. The majority in ***Tingle*** made no determination of whether in future cases we might consider voluntary employment termination unforeseeable at the time of the original decree as a justification for reduction in child support payments. ***Id***. The concurring justices in ***Tingle*** did indicate that there may be instances when voluntary termination of employment could constitute a material change in circumstances. However, the concurring opinion limited that potential to cases where "the best interest of the child and all concerned would require the father to take a substantial reduction in income in order to become qualified to provide for substantial support for the child in the future." ***Id***. at 1393 (Blass, J., concurring). That is certainly not the case here. Sandra's decision to quit her job to care for a new baby will in no way increase her future ability to support her other children. The ***Tingle*** decision, although distinguishable from this case based upon the length of time between the decree and the termination of employment, is an indication of this Court's disapproval of a parent shirking her responsibility to support her children by unilaterally deciding to quit working.

¶8. In ***Parker v. Parker***, 645 So.2d 1327 (Miss. 1994), we addressed whether an ex-husband terminated from his job due to alleged sexual misconduct was entitled to a child support modification. Barbara Parker asked this Court to view her ex-husband's firing as a voluntary termination, since it was the result of his own willful misconduct. We held:

> "The law is well-settled that, if an obligor, acting in bad faith, voluntarily worsens his financial position so that he cannot meet his obligations, he cannot obtain a modification of support." ***Willis v. Willis***, 109 Or.App. 584, 820 P.2d 858 (Or.1991) *citing **Nelson v. Nelson***, 225 Or. 257, 260, 357 P.2d 536 (1960); ***Jones v. Jones***, 106 Or.App. 264, 267, 806 P.2d 1170 (1991). "Bad faith" has generally been defined as an obligor's action to reduce income or assets for the purpose of "jeopardizing the interests of his children." ***Nelson v. Nelson***, 225 Or. at 261, 357 P.2d 536; ***Lee***, 459 N.W.2d at 369 ("Whether relator's original earning capacity has subsequently changed is dependent upon whether or not his departure from the employment he held during the marriage and after was in bad faith").

***Parker***, 645 So.2d at 1331. Finding no proof of bad faith on the part of Thomas Parker, we upheld the reduction of child support. ***Id***.

¶9. The dissent contends that there is no indication that Sandra quit her job in an act of bad faith. "Bad faith" is defined in Black's Law Dictionary as follows:

> The opposite of "good faith," generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or *a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive*. Term "bad faith" is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

Black's Law Dictionary 139 (6th ed. 1990) (emphasis added). Sandra may not have acted with the express intent of jeopardizing the interests of her older children. However, she effectively compromised their

interests in favor of her new baby. Her conduct amounts to "a neglect or refusal to fulfill some duty. . . by some interested. . . motive." *Id*. Sandra's voluntary termination of her employment amounts to bad faith and requires reversal in this case.

¶10. When a married couple decides that the mother should stay home to raise their children, the decision is made jointly. The father's resulting increased financial burden is agreed upon. In the case of a divorced couple, however, the ex-spouse has no input. It is inequitable for a woman to quit her job by choice and expect her ex-husband to pick up the slack when he had no vote in the matter. "[M]ales and females cannot be treated differently for child- support purposes consistently with the Equal Protection Clause of the United States Constitution." *Stanton v. Stanton*, 429 U.S. 501, 503 (1977). If a man tried Sandra's approach to his child support obligation, it is doubtful that the courts would view his actions favorably. Instead, he'd probably be in jail on contempt charges.

¶11. The dissent's alignment with the purpose behind the Family and Medical Leave Act is misplaced, that piece of federal legislation having no relevance in a child support modification case in chancery court. Furthermore, while Miss. Code Ann. § 43-19-101(3)(d) allows the trial court to deduct an appropriate amount to account for the expense of a child living in the non-custodial parent's home for purposes of calculating child support, the deduction is purely discretionary. Miss. Code Ann. § 43-19-101(3)(d) (1993) . In *Grace v. Department of Human Services*, 687 So.2d 1232 (Miss. 1997), cited by the dissent, this Court held that under the statute the chancellor should consider "children born after the children before the court but residing with the parent" for purposes of calculating total deductions. *Grace*, 687 So.2d at 1235. The problem with this line of reasoning is that it quite literally allows the non-custodial parent to sire himself out of his child support obligation. Under the rationale in *Grace*, a non-custodial parent may continue to conceive additional children to the detriment of his already existent children. We do not believe that the Mississippi Legislature intended such a result. To the extent that it holds otherwise, we overrule our prior decision in *Grace*. Where, as here, the non-custodial parent decides to have additional children, she should not be relieved of her prior obligation to the children from her previous marriage.

¶12. "[I]n order to warrant a modification of child support, any material change in circumstances must be such 'as reasonably to affect the ability of the parties to abide by it and perform the original decree.'" *Poole v. Poole*, 701 So.2d 813, 818 (Miss. 1997) (*quoting* *Hooker v. Hooker*, 205 So.2d 276, 278 (Miss.1967) (*quoting* Bunkley & Morse, *Amis on Divorce and Separation in Mississippi*§ 6.11 at 193 (1957))). The real change in this case is the addition of a new child in Sandra's home. We do not agree that having a new baby reasonably affects her ability to abide by the original child support agreement indefinitely. Where the reason for modification is temporary in nature, the trial court should order a temporary reduction in child support. *See Nichols v. Tedder*, 547 So.2d 766, 781-82 (Miss. 1989). The chancellor's order permanently reducing Sandra's child support obligation is reversed, and this case is remanded for further findings on a reasonable temporary reduction in child support.

¶13. **REVERSED AND REMANDED.**

**PITTMAN, P.J., McRAE, ROBERTS, MILLS AND WALLER, JJ., CONCUR. PRATHER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS AND SMITH, JJ.**

**PRATHER, CHIEF JUSTICE, DISSENTING:**

¶14. Because I am of the opinion that the Chancellor properly exercised her discretion under Mississippi law in reducing the mother's monthly support obligation, I respectfully dissent. This Court has never held that child birth and early childhood rearing cannot be considered special circumstances justifying a modification in monthly child support payments. In support of my view that the Chancellor properly exercised her discretion, I offer the following legal authorities.

¶15. Initially, the majority finds that Sandra is barred from recovery by the "unclean hands doctrine," in spite of the fact that this was not an issue at the trial or appellate level. Sandra has been given no opportunity to make arguments in defense to an assertion of "unclean hands," and this Court should make no finding in this regard on our own motion.

¶16. The majority next establishes a rule of law denying Chancellors in this State the discretion to permanently[1] reduce child support obligations of a non-custodial parent following the birth of additional children. In so doing, the majority elects to at least partially overrule this Court's recent unanimous decision in *Grace v. Department of Human Services*, 687 So.2d 1232 (Miss. 1997). In my view, this Court's decision in *Grace* was dictated by the provisions of Miss. Code Ann. § 43-19-101(3)(d), and the majority's decision today is just as clearly in conflict with the provisions of this statute.

¶17. The majority initially notes that:

> Furthermore, while Miss. Code Ann. § 43-19-101(3)(d) allows the trial court to deduct an appropriate amount to account for the expense of a child living in the non-custodial parent's home for purposes of calculating child support, the deduction is purely discretionary.

After correctly noting that § 43-19-101(3)(d) grants chancellors the discretion to reduce child support obligations to account for subsequently-born children, the majority appears to determine that the Legislature actually intended to bar this discretion outright. The majority concludes that:

> The real change in this case is the addition of a new child in Sandra's home. We do not agree that having a new baby reasonably affects her ability to abide by the original child support agreement indefinitely.

The majority accordingly concludes that the Chancellor abused her discretion in ordering a non-temporary reduction in Sandra's child support obligation based on the birth of an additional child.

¶18. The Chancellor in the present case did not "relieve" Sandra of her duty to support her children, but merely reduced her child support obligation in a manner consistent with statute. The Legislature expressly provided in § 43-19-101(3)(d) that:

> If the absent parent is also the parent of another child or other children residing with him, then the court may subtract an amount that it deems appropriate to account for the needs of said child or

children.

In the present case, the Chancellor did in fact "subtract an amount that [she] deem[ed] appropriate to account for the needs" of *all* of Sandra's children and the majority cites no valid basis for finding that the Chancellor abused her discretion in this regard.

¶19. In light of its decision that a *temporary* reduction in child support may be warranted, the majority appears to conclude that the Chancellor only has discretion to order a temporary reduction in a non-custodial parent's child support obligation following the birth of another child. A child who is born to a non-custodial parent will require support and care for many years, and the Legislature's intent in enacting § 43-19-101(3)(d) was clearly to provide for support to *all* children born to a particular parent. There is no reasonable basis for ordering a mere temporary reduction in child support obligations when the addition of a new child serves to increase a non-custodial parent's expenses for many years to come.

¶20. The majority's decision appears to be motivated at least in part by the notion that a non-custodial parent may seek to "sire himself out of his child support obligation." I would initially note that the vast majority of prospective parents elect to bear additional children out of personal motivations entirely unrelated to avoiding child support obligations. In addition, it should be apparent that the bearing of additional children does not serve to reduce an obligor parent's aggregate child support obligation pursuant to § 43-19-101(3)(d). Instead, the Legislature has wisely recognized that all children are equally deserving of support and that a non-custodial parent's resources should be allocated to the support of all of his children, regardless of whether the child was born prior or subsequent to the issuance of a child support order.

¶21. In addition to the issues arising out of the birth of an additional child, this Court is also faced with a separate issue arising out of Sandra's voluntary decision to quit her job in order to raise her child. This issue is, of course, separate and distinct from the issues arising out of the birth of an additional child, and the policy considerations are, admittedly, less clear-cut with regard to the present issue. In my view, however, Sandra's decision to quit her job in order to participate in the rearing of her child should not, as a matter of law, preclude her from a reduction in child support payments.

¶22. As a general matter, I join the majority in opposing reductions in child support obligations based upon an obligor parent's voluntary decision to quit a job. It is my view, however, that there are certain exceptional situations in which a Chancellor is justified in permitting a reduction in child support obligations following a voluntary termination of employment, as long as there are no indications of bad faith. I would submit that the situation in which a parent quits work in order to personally raise a child during the formative early childhood years *may* constitute such an exception in an appropriate case. I would emphasize, however, that this is a matter which should be in the discretion of the Chancellor, who is best able to evaluate the circumstances of each particular case and to evaluate the good faith or lack thereof on the part of the obligor parent.

¶23. There is no indication in the record that Sandra quit her job out of a desire to lower her child support payments or for any other reason which might indicate bad faith on her part. Sandra testified that she was seeking, in part, to avoid day care expenses, and any loss of salary which she experiences will, to some degree, be offset by the money she saves by rearing the child herself. Sandra testified as follows:

Q: And why have you decided not to return to work at this time ?

A: Well, for one thing, I stayed home with my daughter when she was born, with both her and my son for a year and took off work, and, you know, I feel like this child deserves that also, but, also, greatly my financial situation is just - it was bad to start with, and now it's even worse with the added expense of a newborn.

Q: Would it not help you to return to work, with your expenses ?

A: No. My expenses would increase because I'd have day care, and the expenses that go along not only with the day care cost would be the supplies and all that I would have to furnish the day care to keep my child.

I agree that a Chancellor should be hesitant to find a material change in circumstances following a voluntary reduction of income, but I would not limit a Chancellor's discretion to the extent which the majority has elected to in the present case.

¶24. In my view, the complexities of life are such that this Court should properly frown upon strict rules of law which deny a Chancellor the discretion to make a fair and equitable ruling in each particular case[2]. In my view, this Court should also recognize that the early child-rearing years are crucial both for the development of the child and for the establishment of the parent-child relationship. The establishment of such a relationship is equally as important as any financial issues in the long-term development of a child[3]. I do concede that a parent's decision to quit a job in order to participate in child-rearing should not serve as a basis for a reduction of his or her child support past the early childhood years, absent extraordinary circumstances. I would submit, for example, that the Chancellor would be fully justified in finding that a material change in circumstances has arisen once again at such time (such as when the child reaches school age) when Sandra has greater time to devote to work-related activities.

## CONCLUSION

¶25. In my view, the majority fails to adequately recognize that there are *two* legally distinct factors which might justify a reduction in Sandra's child support obligation in the present case:

1. The birth of Sandra's third child, *and*

2. Sandra's decision to quit her job in order to participate in early child rearing.

With regard to the first factor, the Chancellor was, without question, within her discretion under § 43-19-101(3)(d) in ordering a non-temporary reduction in Sandra's child support obligation following the birth of an additional child. There can be no other rational interpretation of the statute. Accordingly, to the extent that the Chancellor's modification was based on the fact that Sandra had an additional child, there is no basis in law or fact for this Court to disturb the Chancellor's modification. The majority could, at most, conclude that the Chancellor made an excessive reduction based on the birth of an additional child, but the majority has made no inquiry into the facts in this regard.

¶26. The second factor is less clear-cut than the first, but I maintain that this Court should uphold the Chancellor's ruling, at least until such time as Sandra's third child reaches a greater level of maturity and requires less care and attention. It is my view that there is no basis for finding the Chancellor to have abused her discretion in the present case, and I must accordingly dissent.

**¶27. BANKS AND SMITH, JJ., JOIN THIS OPINION.**

1. To the extent that any child support obligation is permanent. Child support orders are, of course, always subject to modification upon a showing of a material change in circumstances.

2. The issue arises, for example, as to whether a parent who gives birth to a disabled child requiring home care would similarly be precluded from quitting her job in order to care for her child.

3. In enacting the Family and Medical Leave Act, 29 USC § 2601, Congress recognized that "it is important for the development of children and the family unit that fathers and mothers be able to participate in early childrearing and the care of family members who have serious health conditions." 29 USC § 2601(a)(2). This federal law is clearly not binding authority in the present context, but I agree with its conclusions regarding the importance of parental participation in early childrearing. This Court should not deny non-custodial parents the right to such participation as a matter of law.