753 So.2d 480 (1999)
David James PULLIS, Appellant,
v.
Deborah Sue LINZEY F/K/A Deborah Sue Pullis, Appellee.
No. 1998-CA-01638-COA.
Court of Appeals of Mississippi.
November 16, 1999.
*481 Gary L. Roberts, Attorney for Appellant.
Billy Parlin, Ocean Springs, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, LEE, AND PAYNE, JJ.
BRIDGES, J., for the Court:
¶ 1. David James Pullis petitioned the Chancery Court of Jackson County to reduce his monthly child support obligation paid to his former wife, Deborah Sue Linzey, for their seven year old daughter. *482 After hearing testimony from several witnesses and reviewing financial documents of both parties, Chancellor Pat H. Watts, Jr. found no material change in circumstances occurred warranting a reduction in child support payments. Several months later, a motion was filed on David's behalf asking the chancellor to revisit the judgement entered against David. The chancellor heard arguments for the Motion to Reconsider and again denied David's request for a reduction in child support payments. David asserts that the chancellor committed reversible error alleging the following:

I. THE TRIAL COURT WAS MANIFESTLY WRONG BY FAILING TO DETERMINE THE APPELLANT PROVED A MATERIAL CHANGE IN CIRCUMSTANCES JUSTIFYING A REDUCTION IN CHILD SUPPORT PAYMENTS.
Finding no merit in this claim, we affirm.

FACTS
¶ 2. David James Pullis and Deborah Sue Linzey, formerly Deborah Sue Pullis, were divorced pursuant to a chancery court decree in June of 1995 after five years of marriage. One daughter, age seven, was born to the marriage. David left high school early and obtained his General Equivalency Diploma (GED). He has no other vocational, technical, academic skills or abilities.
¶ 3. After working as a deckhand, wheel house trainee and other various jobs, David ultimately became a tow boat captain for Gulf Coast Prestress. He worked for Gulf Coast Prestress for twenty-two years in that capacity. He holds a license to operate an uninspected towing vessel restricted to coastal and inland bays issued by the Department of Transportation Coast Guard. This license does not allow David to take passengers for hire or operate anything other than an uninspected towing vessel. David's responsibilities as captain included, but were not limited to, managing a crew of three or four, administering a duty roster and performing minimal electrical and mechanical work. The job required him to live on the boat about 240 days a year. David was sufficiently compensated for serving such hours, his 1995 and 1996 Federal Income Tax Returns showing annual income of $39,970 and $43,547 respectively.
¶ 4. On March 6, 1998 David spoke with his boss at Gulf Coast Prestress and told him that he "couldn't do it any more". David gave notice and voluntarily resigned his position with Gulf Coast Prestress. While admitting that he was not under the care of any medical or psychological professionals, David believed that his health was deteriorating under the stress of his work conditions. He cited weight loss, lack of sleep and marked increases in consumption of cigarettes and coffee as factors influencing his decision. David mentioned other reasons for leaving the job besides the health considerations including "no life, no wife, no family, no friends, no present girlfriends, no holidays" and other similar matters. David left his job as tow boat captain with Gulf Coast Prestress without first securing other employment. He remained out of work for approximately one month but was soon hired as a security guard at Grand Casino Biloxi making $7.50 an hour, working approximately 40 hours a week.
¶ 5. David owns free and clear of encumbrances, his home, valued at $90,000, and a Ford truck, valued at $11,000. He also has $64,000 invested in a 401k plan through Gulf Coast Prestress. As of the date of trial, he owed $16,300 to his parents and was repaying it on very flexible terms. David is required by the divorce decree to carry major medical insurance on the minor child and a life insurance policy on himself. After taxes, social security, and insurance payments, David listed his monthly income as $1, 104.66 against monthly expenses of $1, 648.04, including the $400 monthly child support payment. David believes that these circumstances represent a material change worthy of a *483 reduction in child support payments. We disagree.

STANDARD OF REVIEW
¶ 6. Tedford v. Dempsey, 437 So.2d 410 (Miss.1983), involved an escalation clause in the separation agreement which the husband and wife made as a prerequisite to obtaining a divorce on the grounds of irreconcilable differences pursuant to § 93-5-2 of the Mississippi Code of 1972. In Tedford, the Mississippi Supreme Court noted that the primary duty of the court is to the child and not the parent. The supreme court wrote:
We are first and foremost concerned about the material well being of the ... children.... The legalistic arguments pro and con marshalled by counsel largely ignore this. All need be reminded that in cases such as this the best interests of the children are as always our touchstone.
Tedford, 437 So.2d at 417. It is therefore necessary that we consider the issue presented in light of the above quoted language. In addition, we look to any relevant statutory authority for guidance. Section 93-5-23 of the Mississippi Code of 1972 governs the modification of divorce decrees. It reads in part:
When a divorce shall be decreed from the bonds of matrimony, the court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders touching the care, custody and maintenance of the children of the marriage, and also touching the maintenance and alimony of the wife or the husband, or any allowance to be made to her or him, and shall, if need be, require bond, sureties or other guarantee for the payment of the sum so allowed.... The court may afterwards, on petition, change the decree, and make from time to time such new decrees as the case may require.
Miss.Code Ann. § 93-5-23 (Supp.1999).
¶ 7. Domestic relations matters are among the most difficult cases dealt with by our chancellors; therefore, the standard of review employed by this Court in these cases is very limited and abundantly clear. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard. Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997); Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994); Crow v. Crow, 622 So.2d 1226, 1228 (Miss.1993); Gregg v. Montgomery, 587 So.2d 928, 931 (Miss.1991). In regard to the specific issue of child support, a chancellor can modify an award of child support only if there is a material or substantial change in the circumstances of one of the parties. Bruce v. Bruce, 687 So.2d 1199, 1202 (Miss.1996) (citing Shipley v. Ferguson, 638 So.2d 1295, 1297 (Miss.1994); Morris v. Morris, 541 So.2d 1040, 1042-43 (Miss.1989)). David urges this Court to look at the record below and determine whether or not the chancellor's decision to deny modification of his child support obligation was based upon manifest error. "[A] trial court's finding of fact is manifestly wrong when `although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.'" McCoy v. McCoy, 611 So.2d 957, 960 (Miss.1992)(citing UHS-Qualicare v. Gulf Coast Com. Hosp., 525 So.2d 746, 755 (Miss.1987)).

DISCUSSION
¶ 8. The chancellor heard testimony from three witnesses and reviewed the financial records provided by both parties in this matter. David was questioned at trial about his financial condition. He owns his home and car free of mortgages, as well as an additional back lot attached to his property. David testified that he briefly investigated selling the additional lot for extra money. After examining the *484 testimony and attached exhibits from the lower court trial and rehearing, we cannot say that the chancellor made a manifest error by ruling against David. The chancellor was in the best position to determine the credibility of the witnesses and their respective testimony and proof regarding the matter at issue. As is well-established, the chancellor is vested with assessment of witness credibility, and "the interpretation of evidence where it is capable of more than one reasonable interpretation...." Crow v. Crow, 622 So.2d 1226, 1229 (Miss.1993);(quoting Rainey v. Rainey, 205 So.2d 514, 515 (Miss.1967)). David left his job voluntarily. There was no medical evidence presented that would have warranted quitting his job as tow boat captain for health reasons. Rather, David believed that it was unnecessary to consult a doctor testifying at trial that "I pretty much knew on my own from the way that I was acting around my relatives, people I knew, that my personality wasn't normal anymore, and I wasn't going to wait until I had a heart attack to go see somebody. I knew that I needed to get away, and it wasn't going to take a doctor or a psychiatrist to tell me that, so I just figured it out pretty much."
¶ 9. Both parties argue extensively in their briefs about what would constitute an act of "bad faith" on an obligor's part in relation to reducing child support payments as defined in Parker v. Parker, 645 So.2d 1327, 1331 (Miss.1994). David is correct in that no direct evidence was presented to show that quitting his job was done for the purpose of jeopardizing the interests of the children. Parker, 645 So.2d at 1331. The record reflects that David quit because he was ready to try something different in order to reorganize his private life. It does not appear that David retired from the sea in order to dodge his responsibilities to his daughter. However, simply because David acted without malice toward the interests of the child, he is not automatically entitled to a reduction in child support. The conduct truly at issue is the voluntariness of David's departure in light of the indirect effects of the good faith or bad faith surrounding it.
¶ 10. The Bailey case offers solid guidance on this issue. The issue in Bailey rested upon whether child birth constituted a condition warranting a reduction in child support ordered paid to the custodial parent by the mother. Bailey v. Bailey, 724 So.2d 335(¶ 1) (Miss.1998). In Bailey, the non-custodial mother quit her job to stay home with her new baby, thereby losing income necessary to pay child support to the custodial father of their children. Bailey, 724 So.2d at 335(¶ 7). The court noted that while relative financial conditions and earning capacities of the parties are one factor to be considered in determining whether to modify child support, they have never allowed a reduction in pre-existing child support obligation due to voluntary termination of employment. Id. at 337(¶ 7). Our supreme court went on to explain although the mother didn't expressly intend to jeopardize the interests of her older children, her voluntary retirement from work effectively compromised the best interests of her older children for that of her new baby. Id. at 338(¶ 9). Further, the court decided that the mother's conduct amounted to "a neglect or refusal to fulfill some duty ... by some interested ... motive", a definition of "bad faith" as listed in Black's Law Dictionary. Id. at 338(¶ 9)(citing Black's Law Dictionary 139 (6th ed.1990)). In the Tingle case, the divorced father quit his job and enrolled in a course of computer study at a state university. Tingle v. Tingle, 573 So.2d 1389, 1390 (Miss.1990). The Mississippi Supreme Court held that even though the father may be able to get a better job later by improving himself through education now, "under the facts of the case at bar, the unilateral acts of the appellee do not justify a reduction in his child support obligation." Tingle, 573 So.2d at 1393.
*485 ¶ 11. In the instant case, David's conduct falls in line with that of the mother in Bailey and the divorced father in Tingle. David quit his job for personal reasons, not to return to school in hope of achieving a better job later in life. Although he complained of health problems, no medical evidence was presented at trial to prove his ailments resulted from work related stress; therefore, we cannot consider those claims. David and Deborah's minor child should not suffer a diminution in support because of David's unilateral act based upon personal preferences about his workplace. If David can find a different job that allows him to make those child support payments while improving upon what he considers an unsatisfactory private life, so be it. However, this Court will not allow him to do so at the expense of his daughter.
¶ 12. To effect a modification of child support, David had the burden of showing a material change in his circumstances as a result of events which arose after the entry of the original decree. Morris v. Morris, 541 So.2d 1040, 1042-43 (Miss.1989). The Mississippi Supreme Court held that the proponent of modification of a financial obligation must establish a material change in circumstances of one or more of the interested parties, either the father, mother, or children, arising subsequently to the rendering of the original decree. McEachern v. McEachern, 605 So.2d 809, 813 (Miss.1992). As equity demands, the child support provisions agreed to by the parties are subject to modification upon a showing of a material change in circumstances not contemplated at the time of the divorce decree. Lahmann v. Hallmon, 722 So.2d 614, 622 (Miss.1998).
¶ 13. David summarily failed in carrying the burden of proof. David admitted on cross-examination that he was contemplating changing jobs at the time of the divorce in the following colloquy:
Atty: Now, you testified that the last few years you had been stressedI guess contemplating changing jobs; is that correct?
David: Yes, sir, for a while.
Atty: Approximately how long had that been that you had this in your mind that you may be wanting to change jobs?
David: Probably maybe 10 or 12 years.
Atty: So it would be fair to say that at the time of the divorce, that that was something that you anticipated may happen that you may change jobs?
David: I wanted to quit, but I couldn't.
The burden of proof requires that the change in circumstances pled as basis for reduction in child support payments not be contemplated at the time of the divorce decree. By his testimony and that of other witnesses, David anticipated leaving his job as a tow boat captain before the divorce and during the divorce. Much of the testimony from David and others revolved around David's unusually long stint as a tow boat captain, serving longer than the average person would in a similar position. Also, evidence was presented that it is common in that particular profession for a person to leave active duty as a tow boat captain and return a few years later. The chancellor was well within his discretion to deny David the relief he sought. This Court does not question the sincerity of David's claims, but under these circumstances we must hold him to the agreement signed with the divorce decree.
¶ 14. THE JUDGEMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.