# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00068-COA

DAVID W. MARTIN                                                              APPELLANT

v.

WENDY E. BORRIES                                                             APPELLEE

DATE OF JUDGMENT:             12/15/2017
TRIAL JUDGE:                  HON. MICHAEL H. WARD
COURT FROM WHICH APPEALED:    JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       WILLIAM CARL MILLER
ATTORNEYS FOR APPELLEE:       CALVIN D. TAYLOR
                              WENDY WALKER BORRIES
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
DISPOSITION:                  AFFIRMED - 06/18/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., TINDELL AND McCARTY, JJ.

### BARNES, C.J., FOR THE COURT:

¶1.     David Martin and Wendy Borries were divorced in the Jackson County Chancery Court on August 3, 2007.  Borries was granted physical custody of the couple's two minor children, aged 6 and 11.  Martin was ordered:  (1) to pay child support of $1,000 per month; (2) to pay for half of the costs for the minor children's extracurricular or school activities; and (3) to provide medical and dental insurance for the minor children and half of any medical procedures not covered by said policies.

¶2.     Borries filed a motion for contempt against Martin in March 2009, and the chancery court granted the motion, finding Martin was $5,000 in arrears for child support.  Martin was ordered to pay Borries the entire arrearage, and the parties also agreed to modify the previous

decree to require that Martin pay an additional $300 for the children's extracurricular activities. On January 15, 2013, Borries filed a second contempt motion and a request for modification of child support. Martin and Borries entered into an agreed order of modification on February 28, 2014, with Martin to pay $1,700 in monthly child support and $300 a month for the children's extracurricular activities—twenty percent of his salary (capped at $100,000).[1] *See* Miss. Code Ann. § 43-19-101(1), (4) (Supp. 2013).

¶3. Martin's contract as a project-management consultant ended on May 31, 2015, and while awaiting a new assignment, he relocated his new wife and step-daughter from China to Gautier, Mississippi, in July 2015. Due to global economic conditions, however, Martin asserts that he was unable to find a new assignment with a comparable salary; so he lived off his savings and eventually took a job as an electrician with Ingalls Shipbuilding, earning approximately $4,200 a month.

¶4. On April 20, 2016, Martin filed a petition for modification of child support. Borries filed a counter petition requesting, among other things, that Martin pay one-half of their eldest child's college expenses.[2] A trial was held on July 29, 2016, and December 1, 2016. Martin testified that in 2014 and 2015, he earned on average approximately $200,000 a year, but since returning from overseas, his income had decreased because he could not find comparable work. Although he admitted there were jobs available, he was reluctant to move

---

[1] At the time of the agreed order, Martin was working overseas (South Korea) as a project management consultant, earning between $180,000 and $229,000 annually.

[2] As the other requests in Borries's counter-petition are not before us on appeal, we find it unnecessary to enumerate them here.

to any overseas location that might constitute a safety risk to him. Borries testified that Martin had been planning to quit working overseas and move back to Mississippi.

¶5. Finding that Martin's "decrease in salary [was] a voluntarily reduction in income," the chancery court denied Martin's petition for modification of child support on June 7, 2017. The court ordered Martin to pay one-half of the oldest child's college expenses with the provision that while the child is away at college, Martin's child-support obligation would be reduced to $1,400 a month (including the $300 monthly extracurricular expenses). Further, the chancery court found Martin in contempt for his lateness in paying child support and his failure to provide health insurance for the children.

¶6. Martin appeals the chancery court's denial of his petition for modification of child support. Borries's brief contains a "counter-appeal," challenging the court's decision to reduce Martin's child-support obligation during the months that their oldest child is at college, and she requests attorney's fees on appeal. Finding no error, we affirm the court's judgment. We deny Borries's request for attorney's fees.

**STANDARD OF REVIEW**

¶7. This Court conducts a limited review of a chancery court's decision in a domestic-relations matter. *Howard v. Howard*, 968 So. 2d 961, 972 (¶23) (Miss. Ct. App. 2007). A chancery court's findings will not be disturbed on appeal when supported by substantial evidence unless its determination was an abuse of its discretion, manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. *Sessums v. Vance*, 12 So. 3d 1146, 1147 (¶3) (Miss. Ct. App. 2009) (citing *Southerland v. Southerland*, 875 So. 2d 204, 206 (¶5)

3

(Miss. 2004)).  Questions of law are reviewed de novo.  *Howard*, 968 So. 2d at 972 (¶23).

## DISCUSSION

I.   **Whether the chancery court erred in denying Martin's request for a modification in child-support payments.**

¶8.   The chancery court denied Martin's petition for modification, finding he had "failed to prove to the [c]ourt a substantial and material change in circumstances since the February 28, 2014, [a]greed [j]udgment of [m]odification."  In its findings, the court placed "great weight" in Martin's earning capacity and concluded that his reduction in income was voluntary.

¶9.   "There can be no modification of a child support decree absent a substantial and material change in the circumstances of one of the interested parties arising subsequent to the entry of the decree sought to be modified." *Evans v. Evans*, 994 So. 2d 765, 770 (¶16) (Miss. 2008) (quoting *Gillespie v. Gillespie*, 594 So. 2d 620, 623 (Miss. 1992)).  One factor to be considered in assessing whether a material change in circumstances has occurred warranting modification of child support "is the relative financial condition and earning capacities of the parties."  *Bailey v. Bailey*, 724 So. 2d 335, 337 (¶7) (Miss. 1998) (citing *Caldwell v. Caldwell*, 579 So. 2d 543, 547 (Miss. 1991)).  But "[t]he change must be one that cannot have been reasonably anticipated at the time of the original decree and one that reasonably affects the parties' ability to abide by the original decree." *Howard*, 968 So. 2d at 972 (¶24) (citing *Poole v. Poole*, 701 So. 2d 813, 818 (¶¶19, 21) (Miss. 1997)).  Martin claims that he suffered a material change in circumstances that was unforeseeable and "came through no fault of his own."  Therefore, he argues that the court's findings were "manifestly wrong."

4

¶10.    In *Tingle v. Tingle*, 573 So. 2d 1389, 1391 (Miss. 1990), the chancery court granted a father's petition to reduce his child-support obligation after the father quit a steady, well-paying job to attend college full-time.  The Mississippi Supreme Court noted that when the father entered into the divorce decree awarding child support—only six months before filing the petition for modification—"it [was] reasonable to believe that this action . . . was anticipated."  *Id*. at 1392.  The supreme court, therefore, concluded that "under the facts of the case at bar, the unilateral acts of the appellee do not justify a reduction in his child support obligation" and reversed the chancery court's decision.  *Id*. at 1393.  Subsequently, in *Bailey*, the supreme court reversed and remanded a chancellor's decision to reduce a mother's child-support obligation after she left her employment to stay at home with a new baby.  *Bailey*, 724 So. 2d at 337 (¶6).  Concluding that the mother's actions constituted a voluntary reduction in income, the *Bailey* Court reasoned that it would be inequitable for one parent to quit his or her job by choice and expect the other parent "to pick up the slack" without having any vote in the matter.  *Id*. at 338 (¶10).

¶11.    At trial, Martin testified that he had worked offshore in project management for eight years and that his adjusted gross income in 2013 was $186,782 and $229,000 in 2014.  He earned $184,716 from January to June 2015.  When Martin entered into the agreed order in 2014, he was aware that his project assignment had a finite duration.  Furthermore, although Martin claims that the job market was "difficult" and that he was unable to find equivalent employment to his prior job, there was testimony that there were job opportunities available to him, which for his own personal reasons, he found unappealing.

Q.   And you would admit to His Honor there are postings now on Rigzone that you certainly would be qualified for?

A.   There are postings on Rigzone that I would certainly be qualified for.

. . . .

But what I do know is there are various countries in this world that I absolutely will not work in because of the nature that our world is in right now . . . they're high-risk areas."

As the chancery court observed, it was Martin's decision "not to return to his high paying career unless he [could] choose the country to which he would go," and Martin admitted before the court that taking the job at Ingalls for less pay was "a choice that I have made." Our Court has held that a minor child "should not suffer a diminution in support because of [the father's] unilateral act based upon personal preferences about his workplace." *Pullis v. Linzey*, 753 So. 2d 480, 485 (¶11) (Miss. Ct. App. 1999). Martin also acknowledged that three months after his contract ended, he bought his wife a new Mercedes for $38,223.

¶12.   Borries also testified that Martin had been planning to quit working offshore for a while:

A.   He has told me for years that he was going to quit his job and come work at Ingalls, and I wasn't going to be getting the child support that I was getting.

Q.   What did he describe it as? What was the word he used to describe his payments to you?

A.   The gravy train.

Q.   Okay. So [Martin] said that he was going to quit working overseas, come work at the shipyard, and that, quote, the gravy train–what would happen to the gravy train?

6

A.      It was going to stop.

Q.      Okay.  And so he told you he was going to do this?

A.      He has told me numerous times over the years.  He told me he was going to quit his job as soon as . . . he married this woman.

        . . . .

        So he has told me that when [his wife] gets her citizenship and she–he moves her over here, he's going to quit working offshore and find a job here, and he wasn't going to be paying child support because the gravy train was going to stop.  And he has told me that so many times it's not even funny.

In *Leiden v. Leiden*, 902 So. 2d 582, 585 (¶¶12, 14) (Miss. Ct. App. 2004), this Court affirmed a chancellor's decision to deny modification of child support when the father's actions in terminating his employment were voluntary and the evidence showed that he "had planned to take an early retirement."

¶13.    We find this case similar.  The evidence reflects that Martin planned to quit his overseas job and return to Mississippi for less pay.  These actions were voluntary and anticipated.  Finding no manifest error in the chancery court's determination that Martin voluntarily reduced his income, we affirm the court's denial of the petition for modification.

¶14.    In her brief, Borries includes a "counter-appeal" of the chancery court's decision to reduce Martin's child-support obligation during the months that the child is at college.  Mississippi Rule of Appellate Procedure 4(a) requires that a notice of appeal must be filed with the clerk of the trial court.  The comment to Rule 4(c) explains that a notice of appeal is also required for cross-appeals and should be filed within fourteen days after the date of the first notice of appeal "unless a longer period is prescribed by another provision of Rule

7

4." Because we find no notice of appeal filed by Borries in the record for her "counter-appeal," this issue is not properly before this Court.

## II. Whether Borries is entitled to attorney's fees on appeal.

¶15. After finding Martin in contempt, the chancery court awarded Borries $1,800 in attorney's fees. Borries now requests attorney's fees for the appeal in the amount of $5,000, or in the alternative, the minimum amount of $900, which is one-half of the attorney's fees awarded by the court below.[3] Martin argues that attorney's fees are not warranted as Borries failed to show that she has a financial inability to pay. However, "a specific finding of inability to pay is not required when attorney's fees are assessed against a party found to be in contempt." *Riley v. Riley*, 196 So. 3d 1159, 1165 (¶29) (Miss. Ct. App. 2016) (quoting *Vincent v. Rickman*, 167 So. 3d 245, 251 (¶22) (Miss. Ct. App. 2015)).

¶16. Martin further asserts that because he did not appeal the court's finding of contempt, Borries was not forced "to expend more attorney's fees in order to protect the finding of contempt." In *Dailey v. McBeath*, 151 So. 3d 1038, 1045 (¶¶22-23) (Miss. Ct. App. 2014), this Court declined to award the appellee attorney's fees on appeal where it was presumed that the award of attorney's fees was based on the chancery court's finding of contempt, and the appellant/contemnor did not appeal the court's finding on that ground:

> Here, there was no discussion by the chancellor at the 2012 hearing or in the July 24, 2012 order regarding Tracie's inability to pay her attorney's fees. However, in the April 2010 order, the chancellor had awarded Tracie $7,000 in attorney's fees "due to the egregious conduct of the defendant."

---

[3] *See Lauro v. Lauro*, 924 So. 2d 584, 592 (¶33) (Miss. Ct. App. 2006) (holding that the award of attorney's fees on appeal are generally one-half of the amount awarded in trial court).

Furthermore, in Tracie's July 21, 2011 petition for modification and contempt, she specifically argued that attorney's fees should be awarded "due to the respondent's willful refusal to support his child." Therefore, we must assume that the chancellor awarded attorney's fees based on his finding of contempt and Gregory's obstinate refusal to pay child support; not based on Tracie's inability to pay. *In the present appeal, Gregory has not challenged the order of contempt, but rather the modification of child support; therefore, the reason for which attorney's fees were granted is not at issue on appeal.*

*Id*. at 1405 (¶22) (emphasis added). In the present case, attorney's fees of $1,800 were awarded based on the finding of contempt, not on Borries's inability to pay. Accordingly, because Martin has not appealed the chancery court's finding of contempt, we decline to award Borries attorney's fees on appeal.

¶17. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR. WESTBROOKS AND LAWRENCE, JJ., NOT PARTICIPATING.**