# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-SA-01079-COA

**ROSHATA SELF**                                              **APPELLANT**

**v.**

**LIMBRIX LAPRINCE CONLEY AND**                  **APPELLEES**
**MISSISSIPPI DEPARTMENT OF HUMAN**
**SERVICES**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/09/2024 |
| TRIAL JUDGE: | HON. CATHERINE FARRIS-CARTER |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WARREN LOUIS MARTIN JR. |
| ATTORNEYS FOR APPELLEES: | LIMBRIX LAPRINCE CONLEY (PRO SE) |
| | VALARIE B. HANCOCK |
| | CRISTINA SEGUEIRA |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 04/21/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND McDONALD, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. Roshata Self appeals the Chancery Court of Leflore County's final order on child support and visitation regarding her two minor children fathered by Limbrix Conley. The chancery court found Conley would pay the Mississippi Department of Human Services (DHS)[1] $300 per month for child support and $50 per month toward Conley's child support

---

[1] DHS "is charged with establishing paternity and child support orders for all recipients of public assistance." Deborah H. Bell, *Bell on Mississippi Family Law* § 13.01[2][d], at 484 (3d ed. 2020). "By accepting public assistance, a custodial parent automatically assigns to DHS the right to collect child support." Bell § 13.01[2][d][I], at 484-85. "Ancillary issues such as custody and visitation are not within the scope of DHS's representation." Bell § 13.01[2][d][ii], at 485 (citing Miss. Code Ann. § 43-19-35(3)).

arrearage of $16,707.23. Further, Conley was to resume his court-ordered visitation, which would not be supervised. We find no error and affirm.[2]

## FACTS AND PROCEDURAL HISTORY

¶2. Self and Conley had three children together, a daughter and two sons. They never married. By the time of trial, the daughter was emancipated and not at issue in this case. The two minor sons, B.S. and P.S.,[3] were born in September 2013 and April 2018, respectively. Both Self and Conley live in Itta Bena, Mississippi.

¶3. In March 2021, Conley filed a complaint for paternity and visitation, among other matters, of his two sons in the Leflore County Chancery Court. In September 2021, an agreed order of Conley's paternity was entered, as well as an order appointing a guardian ad litem (GAL). Initially, Self's allowing Conley visitation of their children was the case's primary issue.

¶4. In April 2022, Self filed a motion for emergency relief and a temporary restraining order in response to an incident the week before. She alleged that Conley had entered Self's home uninvited and taken the younger child, without Self's consent, when she was out of town with the older child. Self complained that Conley's behavior was generally unsafe and that he was abusive toward the child; therefore, Self requested Conley be prohibited from

---

[2] Neither Conley nor DHS filed an appellee's brief. Matters involving child support concern the best interest of the child and cannot be waived for failure to file a brief. *Green v. Green*, 349 So. 3d 1187, 1199 (¶44) (Miss. Ct. App. 2022) (citing *Oster v. Ratliff*, 205 So. 3d 1149, 1155 (¶22) (Miss. Ct. App. 2016)). Therefore, despite Conley's and DHS's failure, we shall address the merits of this appeal.

[3] To protect the children's privacy, the names of the children are replaced with initials.

any physical contact with the children. The court entered an order that Conley temporarily refrain from having contact with the children or Self until the matter was further investigated.

¶5. On May 17, 2022, the court entered a temporary order granting Conley periods of visitation with the children. However, in June 2022, Self again accused Conley of physical and mental abuse of one of the children. The Mississippi Child Protection Services (CPS) became involved and investigated the matter. A forensic interview was performed on the child at issue. The forensic report was released for the chancery court's review, as well as the GAL's report.

¶6. On July 15, 2022, the chancery court issued an order finding Self would have physical custody of the minor children, and Conley would have reasonable visitation as detailed in an attached schedule.[4] The parties were to submit to the court a list of trusted persons who were authorized to take care of the children, as well as to keep a log for the next three months of individuals alone with the children. CPS was ordered to continue to monitor the family, conduct monthly home visits, and submit another report on the family dynamics in ninety days. The GAL was to remain on the case.

¶7. The record indicates the parties continued to be in conflict, with Self's pressing trespass charges against Conley and accusing Conley of sexually abusing one of their sons. In January 2023, Conley, pro se, wrote a letter to the chancery court, complaining that Self

---

[4] The visitation schedule generally allowed Conley visitation with his children on alternate weekends and holidays, as well as two weeks in the summer. Conley lived with his mother.

3

was not complying with the court-ordered visitation.

¶8. On August 28, 2023, after a hearing, the chancery court issued a judgment of custody and visitation. The chancellor examined the child at issue about the sexual abuse accusations *in camera*. Self was granted physical custody of the children, and Conley was awarded reasonable visitation according to the court's previous schedule in the order of July 15, 2022. Additionally, DHS submitted a statement of accounting to the court on Conley's child support that found an arrearage total of $16,531.13.[5] DHS noted Conley was under contempt review for the arrearage, with a hearing scheduled for December 2023.[6]

¶9. In March 2024, Conley filed a petition for child custody, citation of contempt, and request to set a trial date. Conley claimed there had been a change in circumstance—Self's mental state had deteriorated, causing her to keep the children away from him and make false allegations of child abuse against Conley to CPS. Further, Conley complained that Self had not allowed him to see the children in two months; therefore, Self should be held in contempt of the court's visitation order.

¶10. In response, Self denied Conley's allegations and filed a counterclaim for contempt and modification of visitation. Self contended that Conley continued to remain in arrearage

---

[5] The DHS statement began in August 2007 and ended in August 2023. It showed Conley had paid a total of $8,896.26 in child support during this time. Conley had a child support obligation starting in May 2008 of $114 for one child. His child support remained at $114 until March 2015, when it increased to $214 per month for two children. However, during some of that period, Conley did not have a child support obligation. Beginning in March 2020, Conley's child support obligation was $235 per month. The report shows Conley did not make any child support payments until July 2020, with the exception of a payment in 2016 and in 2017. In July 2020, Conley began paying more regularly.

[6] The outcome of the DHS hearing is not in our record.

4

of his child support and requested "an immediate review of the contempt status of the child support obligation . . . and an incarceration order to force [Conley] to purge himself of the outstanding arrearage before any relief he seeks . . . be granted." Additionally, Self alleged that since the last hearing, "the visitation arrangement has deteriorated." She claimed that when the children were in Conley's care, he did not properly care for them and exposed them to alcohol and drugs. Therefore, Self requested modification of visitation, requiring Conley have only supervised visitation.

¶11. On May 30, 2024, the chancery court issued an agreed temporary order that Conley resume his court-ordered visitation under the August 28, 2023 order but refrain from certain behaviors with the children: sleeping in the same room as them, viewing inappropriate videos or pictures, and cursing in front of them.

¶12. On August 21, 2024, the chancery court held a hearing on Conley's petition for custody and child support arrearage[7] and Self's counterclaim for contempt and modification of visitation. At this time, the children were ten and six years old. Counsel for DHS[8] testified about Conley's child support obligation, referring to the DHS statement of accounting, which was entered into evidence. Currently, Conley had a child support obligation of $235 per month, with an additional $50 toward the arrearage. While Conley was in arrearage $16,707.23, DHS had received his monthly child support obligation, along

---

[7] In May 2024, the chancery court consolidated DHS's civil action against Conley regarding child support with this case.

[8] Attorney Valarie Hancock works for Young Williams Child Support Services, a firm which has contracted to represent DHS regarding child support.

with the arrearage payment, for the last three months, and some partial payments before then. Conley was personally paying the amounts; his wages were not being withheld by his employer. DHS's counsel determined Conley's child support was "imputed at minimum wage," but counsel admitted she had no information on Conley's income, such as tax returns or other financial statements. DHS counsel testified that in 2008, Conley's child support started at $114 per month for his first child, who is now emancipated. In March 2015, it increased to $214, which was the imputed minimum-wage amount for two children. In March 2020, his child support was $235 per month and has remained there.

¶13. Conley called Self as an adverse witness to explain why she had withheld his visitation. Self testified it was "for their safety" and referred to an incident in July where Conley had taken the children out of state without her knowledge, in violation of the court's order. Further, she complained that Conley had not timely returned the children to her. Therefore, Self requested supervised visitation only. On cross-examination, Self maintained that she was not withholding visitation due to the child support owed but only for the children's safety. However, Self testified that Conley was "not trying to work . . . not trying to pay his child support." She requested Conley be incarcerated for owing child support.

¶14. Next, Conley testified that Self often withheld visitation, and he had not seen his children in over a month. He claimed to have reported all his income and expenses to DHS, and lately, he was paying his child support obligation. As far as employment, Conley explained that although he is an owner/operator of a commercial truck, his commercial driver's license was expired. Currently, he worked at a snow cone stand making $300 a

6

week. Conley admitted taking the children out of town without Self's knowledge and in violation of the visitation order.

¶15. The chancellor found no issues regarding "the health, safety, and welfare" of the children when in Conley's care after reviewing the GAL's report, numerous interventions by DHS, and various police reports over the three-year duration of the case. Therefore, the court found no basis for supervised visitation, especially since Conley lived with his mother. The chancellor also noted neither party was following the visitation order. The court also made clear that "there is a hard wall separation between visitation and child support. The purpose of visitation is beyond that of a monetary basis." The chancellor admonished the parties that her order of visitation should be followed regardless of child support owed. She also firmly rejected Self's suggestion that Conley not be allowed visitation until he pay one-half of his arrearage, finding this suggestion "harmful" to the children, as well as impossible due to Conley's low income. On child support, the court found the amount DHS had assessed Conley of $235 per month was insufficient for two children and raised the amount to $300 per month. Conley was to pay DHS $50 per month on his arrearage, which totaled $16,707.23. These payments were to begin on October 1, 2024.

¶16. On September 9, 2024, the chancery court entered a final order on child support, as stated at the hearing, and visitation, which would resume under the schedule of the August 28, 2023 judgment. Aggrieved, Self filed a notice of appeal. Self also filed in both the chancery court and Mississippi Supreme Court a motion to stay proceedings pending the appeal. Both courts denied her motion.

7

**STANDARD OF REVIEW**

¶17.  "The standard of review for findings of fact by the chancellor is that such findings will not be disturbed on appeal unless they are manifestly wrong, clearly erroneous, or not supported by substantial credible evidence." *Brown v. Miss. Dep't of Hum. Servs.*, 806 So. 2d 1004, 1005 (¶4) (Miss. 2000) (citing *Sandlin v. Sandlin*, 699 So. 2d 1198, 1202 (Miss. 1997)).  Questions of law are reviewed de novo.  *Id.*

**DISCUSSION**

¶18.  Self argues that the chancery court erred in not ordering Conley to be incarcerated for owing $16,707.23 in child support arrearage and that Conley violated the "clean hands" doctrine by seeking visitation rights while having such a substantial child support arrearage.

**I.      Imprisonment for Child Support Arrearage**

¶19.  Self contends that the chancery court should have ordered Conley to be incarcerated for his $16,707.23 child support arrearage in order to "force" him to pay it.  In support, Self cites *Ellis v. Ellis*, 248 Miss. 483, 490, 160 So. 2d 904, 907 (1964), for the proposition that a party's willful failure to pay court-ordered child support despite having the ability to do so justifies the chancery court imposing imprisonment.

¶20.  Under Mississippi statutory law, Mississippi chancery courts have the power to impose fines and imprison individuals guilty of contempt of court.  Miss. Code Ann. § 9-1-17 (Rev. 2019).  "At the discretion of the court, any person found in contempt for failure to pay child support and imprisoned therefor may be referred for placement in a state, county or municipal restitution, house arrest or restorative justice center or program . . . ."  *Id.*

Further, "[t]he chancery court . . . shall have power to punish any person for breach of injunction, or any other order, decree, or process of the court, by fine or imprisonment, or both . . . ." Miss. Code Ann. § 9-5-87 (Rev. 2019).

¶21. "A citation for contempt is determined upon the facts of each case and is a matter for the trier of fact." *McCracking v. Champaigne*, 805 So. 2d 586, 589 (¶8) (Miss. Ct. App. 2001) (citing *Milam v. Milam*, 509 So. 2d 864, 866 (Miss. 1987)). "It is committed to the sound discretion of the trial court, and this Court will not reverse where the chancellor's findings are supported by substantial credible evidence." *Id.* (citing *Ligon v. Ligon*, 743 So. 2d 404, 406 (¶5) (Miss. Ct. App. 1999)).

¶22. Child support was not an issue before the chancery court until the order of consolidation with DHS in May 2024. The chancery court's only order determining child support was the final order of September 9, 2024, where the court increased Conley's obligation to DHS from $235 to $300 per month and decreased his arrearage payments to DHS from $70 to $50 per month. Since the order of consolidation, Self requested contempt for Conley's child support arrearage in her counterclaim, in response to Conley's March 2024 petition, as well as during the August 21, 2024 hearing. However, in the September 2024 order, the chancery court declined to find Conley in contempt, instead ordering him to begin making payments the following month. Further, even though Self testified that Conley was purposefully trying to avoid paying his child support or arrearage, she presented no evidence to support this contention or to show that Conley *could* pay his obligations but was not, as in *Ellis*. Moreover, at the August 2024 hearing, counsel for DHS testified that

9

Conley had been making recent payments to DHS. Accordingly, we find the chancery court did not abuse its discretion in declining to find Conley in contempt and imprisoning him.

## II. Visitation and the Clean Hands Doctrine

¶23. Relatedly, Self argues that Conley violated the "clean hands" doctrine by seeking visitation rights while being in violation of a child support order. "The clean hands doctrine prevents a complaining party from obtaining equitable relief when he is guilty of willful misconduct in the transaction at issue." *Bailey v. Bailey*, 724 So. 2d 335, 337 (¶6) (Miss. 1998).

¶24. Here, as discussed above, the chancery court made no finding of any "willful misconduct" by Conley regarding child support. Therefore, the "clean hands" doctrine is inapplicable. Mississippi law is also clear that "[a] parent should not be held in contempt for failure to pay child support when a custodial parent has secreted the child and prevented visitation." *Pierpont v. Bond*, 744 So. 2d 843, 844 (¶5) (Miss. Ct. App. 1999) (citing *Cunliffe v. Swartzfager*, 437 So. 2d 43, 46 (Miss. 1983)). Further, "[a] noncustodial parent may not unilaterally withhold payment of support because of a dispute with the custodial parent. When the parties cannot effectuate visitation the appropriate remedy is to seek the assistance of the court." *Id.* at (¶6) (citing *Thurman v. Thurman*, 559 So. 2d 1014, 1016 (Miss. 1990)). If the parties chose not to seek the assistance of the court for disputes regarding child support and visitation, but "merely disregard the orders of the court," the court can find the parties in contempt. *Id.* at (¶8).

¶25. The chancellor acknowledged this principle that child support and visitation are two

separate matters. From the bench, the chancellor admonished the parties that "there is a hard wall separation between visitation and child support. The purpose of visitation is beyond that of a monetary basis." She firmly rejected Self's suggestion that Conley be prohibited from visitation with his sons until he pay one-half of the arrearage, noting how detrimental that separation from their father would be to the children, who were her main concern in this proceeding. Additionally, after reviewing the record, the chancery court found the children were not in danger during Conley's visitations and denied Self's request for supervised visitation. The court also stressed the importance of Conley's supporting his children financially, stating, "I don't care if you sell blood or pick up cans; you've got [children] to take care of." Therefore, the chancery court allowed Conley to resume visitation as ordered, as well as make the newly determined child support and arrearage payments to DHS. We cannot conclude the chancery court erred in this regard. Therefore, this issue is without merit.

## CONCLUSION

¶26. For the foregoing reasons, we affirm the chancery court's final order.

¶27. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**

11