# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-01124-SCT

*CALVIN PHILIP POOLE, JR.*

*v.*

*PENNY WOODS POOLE*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/15/96 |
| TRIAL JUDGE: | HON. VICKI R. BARNES |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | VAUGHN DAVIS |
| ATTORNEY FOR APPELLEE: | SAMUEL D. HABEEB |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 11/13/97 |
| MOTION FOR REHEARING FILED: | 12/1/97 |
| MANDATE ISSUED: | 3/18/98 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. On March 26, 1996, the Chancery Court of Warren County heard Calvin Poole's Motion for Modification of child support payable to his ex-wife, Penny Poole. On May 15, 1996, the court denied the motion. Calvin Poole filed a Motion for Reconsideration which, was denied on August 2. Aggrieved, Calvin Poole appeals to this Court, assigning as error the following issues.

## ISSUES

**I. Whether the chancery court erred in taking judicial notice "that in the financial statement filed by Dr. Poole on June 25, 1992 . . . he swore under oath that his gross monthly income was $9,573.19 and his adjusted gross income was $4,718.97."**

**II. Whether the chancery court erred in finding that no material change in circumstances had occurred warranting a modification of the prior judgment of divorce or, in the alternative, that any change which had occurred could have been reasonably anticipated**

**or, in the alternative, that Calvin Poole should be denied relief based on a lack of good faith.**

**III. Whether the chancery court erred in awarding attorney fees to Penny Poole.**

## FACTS

¶2. Calvin Philip Poole, Jr. ("Calvin") and Penny Woods Poole ("Penny') were married on January 6, 1985. Calvin was a medical doctor having received his degree in 1980. He had specialized in obstetrics and gynecology and, since July of 1984, had practiced at The Street Clinic in Vicksburg, Mississippi. Two children were born of the marriage, Hunter David Poole, born in 1987, and Joseph Hillary Poole, born in 1990.

¶3. On September 24, 1992, the Chancery Court of Warren County granted Calvin and Penny a divorce on the ground of irreconcilable differences. The divorce decree, incorporating the Joint Settlement Agreement reached by the parties, provided that Penny would have physical custody of the two children, that Calvin would pay to Penny child support in the amount of $2,000 per month, and that Calvin would pay to Penny lump sum alimony in the amount of $120,000 payable at the rate of $1,000 per month for a period of ten years.

¶4. On November 27, 1995, Calvin filed a Motion for Modification of child support alleging that due to a material change in circumstances, he could no longer afford to pay the child support required by the divorce decree and joint settlement agreement. The motion was heard in the Chancery Court of Warren County on March 26, 1996.

¶5. Calvin testified that at the time of the divorce, he was practicing as an obstetrician/gynecologist ("OB/GYN") at The Street Clinic in Vicksburg, Mississippi, where he had worked since 1984. He testified that while working as a partner at the clinic, he regularly generated an annual income in the $300,000 range. His tax return for 1992 showed a total income of $367,504.

¶6. Calvin testified that after the divorce, he began drinking heavily, began having problems with depression and even became suicidal. Calvin went to the Hazelton Foundation in Minnesota for treatment, and when he returned, he attempted to return to his practice at the clinic on a part-time basis. After four months, the clinic placed him on disability, after which he began receiving checks from his disability insurance carrier in the amount of $15,000 per month.

¶7. Calvin testified that he attempted to continue his medical career by undertaking a residency in psychiatry in August of 1994 at the University Medical Center in Jackson, Mississippi. However, he did not complete the residency. Calvin testified that he was contractually bound by his medical malpractice insurance policy to attend weekly meetings of the Caduceus Club, a group of impaired doctors in Mississippi. He testified that he was also required to attend three to four Alcoholics Anonymous meetings per week, and that he had to take monthly drug tests. According to Calvin, if he did not meet his obligations to the Caduceus Club, he would lose his medical malpractice insurance and possibly his medical license. He testified that his obligations to the Caduceus Club hindered his ability to perform as a resident, so he terminated his residency in May of 1995.

¶8. In September of 1995, Calvin secured employment as a physician at the Mississippi State Hospital

at Whitfield, where he was still employed at the time of the hearing. He testified that his gross annual salary at the hospital was $93,065.76, or $7,755.48 per month, with a net take home pay of $4,344.27. He testified that this was his only source of income. Calvin testified that no medical licensure board or other authority was preventing him from practicing his specialty as an OB/GYN, but that he had chosen not to because his psychiatrist had recommended against it. He testified that he did not think that he could handle the pressures and lack of sleep caused by such a practice.

¶9. Calvin testified that in 1994, he sold his interest in a limited partnership for which he received $300,000, $200,000 of which he used to purchase the house in which he was residing at the time of the hearing. In January of 1995, The Street Clinic purchased Calvin's stock in the clinic for $120,000. Of this money, Calvin used $50,000 to start an annuity fund with New York Life, and he used $50,000 to make "a loan slash investment to a friend." The "loan slash investment" was made to Misty Meadows Mastiffs, a dog kennel in Maryland owned by Marla Blethern. Calvin was unable to say whether this payment was a loan or an investment, but he testified that he received no promissory note or stock in the kennel, and that he no longer expected the money to be repaid. At the time of the hearing, Calvin's annuity fund at New York Life was worth $59,000, and he had an $11,867 municipal bond, a life insurance policy with a net cash value of $6,000, a paid-for $19,000 automobile, and $155,000 in retirement funds.

¶10. Calvin's income tax return for 1994 showed a total income of $258,809. This tax return, however, did not reflect the $300,000 Calvin received that year for his interest in the limited partnership. Calvin's Certified Public Accountant, Steve Sessums, testified that Calvin's total income for 1994 was $516,772. Mr. Sessums also testified that while Calvin was employed at The Street Clinic, his tax returns reflected more income than he actually received. According to Mr. Sessums, the clinic was structured so that its partners would report the clinic's earnings as taxable income, but would receive only enough money from the partnership to pay taxes on the income. Thus, much of the income reported on Calvin's tax returns was "phantom" income which he did not actually receive.

¶11. On May 15, 1996, the chancery court entered its Memorandum Opinion and Order on Calvin's Motion for Modification. The chancellor found that at the time of the divorce, Calvin had an adjusted gross income of $4,718.97 per month. The chancellor found that Calvin's current adjusted gross income, as Calvin testified, was $4,344.27. The chancellor found that Calvin offered no positive proof of the reason for his decrease in income, and that he failed to show that he lacked the ability to earn more. The chancellor noted that Calvin offered no evidence, other than his own testimony, that he was unable to effectively handle the stress of his OB/GYN practice. Also, noting Calvin's various expenditures, the chancellor stated that "Dr. Poole asks this court to reduce the support to his children, yet he continues to enjoy the same lifestyle he enjoyed prior to the divorce." The chancellor denied Calvin's motion to modify and ordered Calvin to pay to Penny $1,800 in attorney fees.

¶12. On May 30, 1996, Calvin filed a Motion for New Trial or, in the Alternative, to Open the Prior Judgment and Take Additional Testimony, Amend Findings of Fact and Enter New Judgment. Calvin argued that the chancery court erred in finding that at the time of the divorce, Calvin's adjusted gross income was $4,718.97. He asserted that because nothing establishing this figure was introduced into evidence, "the Court must have relied upon information or documentation which was not made a part of the record at this hearing," and that "the Court has undertaken to conduct an independent investigation and to rely upon information which is apparently known only to the Court thereby

denying the parties the opportunity to respond to the authenticity or reliability of the information relied on by the court." The chancery court granted the motion to take additional testimony, and a hearing was held on June 24, 1996.

¶13. Calvin testified that while employed at The Street Clinic, where he worked throughout 1992, he was paid $4,000 every two weeks and received bonus distributions, depending on the profitability of the clinic, twice a year -- one in July and one in December. He again introduced his 1992 tax return which showed a total income of $367,504. He testified that the joint settlement agreement, in which he agreed to pay $2,000 per month in child support, was based on his total income.

¶14. On cross-examination, Calvin testified that when he was divorced on September 24, 1992 and agreed to the terms of the joint settlement agreement, he did not know what his total income would be for 1992, as he had not yet received his December bonus. He testified that his July 1992 distribution was approximately $70,000 to $80,000. Then, reading from his sworn interrogatory responses signed on September 10, 1992 and filed with the court before his divorce, Calvin stated that his July 1992 distribution was approximately $35,000. Calvin also read his response stating that because a new partner was joining the clinic, he expected that "my income will drop drastically for a period until he builds up his patient load." He then admitted that after the divorce, he received a very substantial distribution in December of 1992, but testified that much of that was "phantom" income which he did not actually receive. Calvin also admitted that in his financial statement, signed June 25, 1992 and attached to his interrogatory responses, he represented to the court that after the deduction of state and federal taxes, his adjusted gross income was $4,718.97 per month.

¶15. On August 2, 1996, the chancery court entered its Second Memorandum Opinion and Order, in which it made the following findings:

> The Court took judicial notice that in the financial statement filed by Dr. Poole on June 25, 1992, just a few months before the final judgment of divorce, he swore under oath that his gross monthly income was $9,573.19 and his adjusted gross income was $4,718.97. Although this information was not brought out at the hearing on the Motion for Modification, documentation of this information was indeed available to Dr. Poole and his counsel, as it was contained in the original divorce file. This information was not "known only to the Court."
>
> The Court did not undertake "to conduct an independent investigation" as the Movant suggests.

The chancery court also compared Calvin's assets -- including the house he lived in -- at the time of the divorce to those at the time of the hearing, and concluded that Calvin enjoyed the same lifestyle he enjoyed prior to the divorce. In response to Calvin's contention that he came into court with "clean hands," the chancellor noted Calvin's unexplained $50,000 payment to a friend. The chancellor found that there was no evidence that Calvin could not resume his prior practice or establish a similar practice in another city. The chancellor also stated:

> If, as Dr. Poole now contends, he knew his income would decrease because he would have to leave his practice due to his drinking problem and because he received large distributions in 1992, that he would not continue to receive after leaving the clinic, then his subsequent decrease in income because of those factors would not be "after-arising circumstances not reasonably anticipated at the time of the agreement."

For these reasons, the chancellor denied Calvin's motion.

## DISCUSSION

**I. Whether the chancery court erred in taking judicial notice "that in the financial statement filed by Dr. Poole on June 25, 1992 . . . he swore under oath that his gross monthly income was $9,573.19 and his adjusted gross income was $4,718.97."**

¶16. Mississippi Rule of Evidence 201(b) provides as follows:

> **Kinds of Facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Calvin argues that because the fact of what his income was at the time of divorce does not fall under either of the two kinds of facts subject to judicial notice, the chancellor erred in taking judicial notice that Calvin's adjusted gross income prior to the divorce was $4,718.97 per month. The flaw in this argument, however, is that the chancellor did not take judicial notice of what Calvin's income *was*, but rather took judicial notice only that Calvin *stated in his sworn financial statement* what his income was. In fact, Calvin himself recognizes this distinction in his Reply Brief:

> Even then, Trial Court did not state that it took judicial notice of Dr. Poole's income at the time of the divorce. This may seem to be a subtle difference, but it is significant. Nowhere, does the Court state that it took judicial notice of what Dr. Poole's income was at the time of the divorce.

As Calvin states, the distinction is indeed significant.

¶17. The fact that Calvin stated in his financial statement what his income was is not one subject to reasonable dispute, in that it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," i.e., the financial statement itself, which was already properly before the court in the original divorce file. In fact, Calvin admitted during the hearing to take additional testimony that he represented to the court in his sworn financial statement that his adjusted gross income prior to the divorce was $4,718.97 per month. Clearly, there is no reasonable dispute as to whether Calvin made this representation to the court, and thus this Court holds that the chancellor did not err in taking judicial notice of that fact.

¶18. Calvin further contends that because he was not aware that the chancery court had taken judicial notice of this fact until entry of the Second Memorandum Opinion and Order, he is entitled, under Rule 201(e), "to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." However, the determination of the chancellor's source of information for finding Calvin's adjusted gross income prior to the divorce to be $4,718.97, and the opportunity to rebut the finding, were *precisely* the reasons for which Calvin requested and was granted the hearing to take additional testimony. It was at this hearing that Calvin testified that it was he himself who submitted this information to the court. Calvin also presented further testimony regarding his income

prior to the divorce. It would serve no useful purpose to conduct yet another hearing on this matter. This Court finds no merit in this assignment of error.

> **II. Whether the chancery court erred in finding that no material change in circumstances had occurred warranting a modification of the prior judgment of divorce or, in the alternative, that any change which had occurred could have been reasonably anticipated or, in the alternative, that Calvin Poole should be denied relief based on a lack of good faith.**

¶19. Modification of support agreements for divorces granted on the ground of irreconcilable differences may be granted only if there has been a material change in circumstances of one or more of the parties. *Varner v. Varner*, 666 So. 2d 493, 497 (Miss. 1995). "The change must occur as a result of after-arising circumstances...not reasonably anticipated at the time of the agreement." *Varner*, 666 So. 2d at 497.

¶20. In the case *sub judice*, the evidence indicated that at the time of the hearing on the motion for modification, Calvin's income was $93,065.76 per year, with an adjusted gross monthly income of $4,344.27. The evidence was not as clear, however, as to what Calvin's income was at the time of the agreement. Although Calvin's 1992 tax return showed a total income of $367,504, his accountant testified that much of this was "phantom" income which Calvin did not actually receive. Also, Calvin's financial statement submitted with his sworn interrogatory responses stated that his adjusted gross monthly income just prior to the divorce was $4,718.97, a figure not significantly higher than that at the time of the hearing. We have always accorded great deference to chancellors on matters for which there has been presented conflicting evidence.

¶21. Also, in order to warrant a modification of child support, any material change in circumstances must be such "as reasonably to affect the ability of the parties to abide by it and perform the original decree." *Hooker v. Hooker*, 205 So. 2d 276, 278 (Miss. 1967) (*quoting* Bunkley & Morse, *Amis on Divorce and Separation in Mississippi* § 6.11 at 193 (1957)). In the case *sub judice*, the chancellor noted that no licensure board or other organization was preventing Calvin from practicing his specialty as an OB/GYN. Calvin testified that he had voluntarily chosen not to do so because his psychiatrist recommended against it. Calvin testified simply that he did not think that he could handle the stress of such a practice. This Court concludes that the chancellor was not manifestly in error in finding that Calvin failed to establish that he was unable to earn more income by pursuing his specialty.

¶22. Furthermore, the evidence showed that Calvin received $300,000 in 1994 for his interest in a limited partnership and that he received $120,000 in 1995 for his interest in the clinic. With this money, he purchased a $200,000 home, started a $50,000 annuity with New York Life, and made a $50,000 "loan slash investment to a friend." The evidence also showed that Calvin had substantial assets at the time of the hearing. In addition to the $200,000 home and the annuity, by then worth $59,000, Calvin had an $11,867 municipal bond, a life insurance policy with a net cash value of $6,000, a paid-for $19,000 automobile, and $155,000 in retirement funds. It does indeed appear that Calvin enjoyed the same lifestyle at the time of the hearing that he enjoyed prior to the divorce. This Court holds that the chancery court did not abuse its discretion in finding that Calvin failed to demonstrate a material change in circumstances affecting his ability to pay $2,000 per month in child

support.

¶23. In *Mullen v. Mullen*, 246 So. 2d 923, 924 (Miss. 1971), we affirmed the chancery court's denial of the motion to modify child support where the movant made no explanation of the expenditure of certain monies except in general terms. Likewise, in the case *sub judice*, Calvin offered no explanation of his $50,000 "loan slash investment to a friend," except to say that he did not expect the money to be repaid.

¶24. Regarding the foresee ability of any material change in circumstances, in addition to Calvin's sworn interrogatory response, read by Calvin at the second hearing, that he knew that his income would decrease "drastically" for a period because a new partner was joining the clinic, Calvin asserted the following in his motion to take additional testimony:

> The Court is in error in its finding that Dr. Poole "began drinking heavily" after the date of the divorce. The proof adduced at the hearing was that at the time of the divorce and prior to the divorce that Dr. Poole had been drinking to such an extent that his work had been affected.

From his own statement, it appears that prior to entering the joint settlement agreement, Calvin knew or at least should have known that he had a drinking problem that might affect his income. Therefore, this Court holds that the chancellor was not manifestly wrong in finding that any decrease in income was not due to "after-arising circumstances not reasonably anticipated at the time of the agreement." This assignment of error is without merit.

### III. Whether the chancery court erred in awarding attorney fees to Penny Poole.

¶25. In its first Memorandum Opinion and Order, the chancery court found that Penny had incurred $2,400 in attorney fees, and ordered Calvin to pay to her $1,800 in attorney fees. Calvin argues that the chancellor erred in this regard because, but for the errors committed by the chancellor, he would have prevailed on his motion to modify, and thus no attorney fees would have been awarded to Penny. He also argues that Penny did not demonstrate that she lacked the financial ability to pay her attorney fees.

¶26. As suggested above, the chancery court did not err in denying Calvin's motion to modify. Also, Penny testified extensively regarding her income and her living and child care expenses, which expenses she testified were increasing each year as the children grew older. Chancellors enjoy broad discretion in the award of attorney fees in domestic cases. "We are 'reluctant to disturb a chancellor's discretionary determination whether or not to award attorney fees and of the amount of [any] award.'" *Ferguson v. Ferguson*, 639 So. 2d 921, 937 (Miss. 1994) (*quoting Geiger v. Geiger*, 530 So. 2d 185, 187 (Miss. 1988)). This Court holds that the chancery court did not abuse its discretion in ordering Calvin to pay to Penny $1,800 of her $2,400 in attorney fees.

¶27. Penny also has filed with this Court a motion for an award of attorney fees for her legal expenses incurred in litigating this appeal. She asserts that her attorney spent at least fifteen billable hours, at a rate of $90 per hour, researching and preparing her brief, and that she is unable to pay these fees as her expenses already exceed her income. This Court will grant her motion, and award her $1,350 in attorney fees incurred on appeal.

## CONCLUSION

¶28. Calvin stated in his financial statement attached to his sworn interrogatory responses that his adjusted gross income prior to the divorce was $4,718.97 per month. This fact is not subject to reasonable dispute. The chancellor did not err in taking judicial notice of that fact. Also, considering all of the evidence before this Court, we find that the chancellor did not err in denying Calvin's motion to modify the child support he agreed upon in the joint settlement agreement. Finally, we hold that the chancery court acted within its discretion in ordering Calvin to pay to Penny $1,800 in attorney fees. This Court affirms the chancery court opinion and order below and grants Penny's motion for an award of attorney fees incurred on appeal.

¶29. **AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS AND SMITH, JJ., CONCUR. DAN LEE, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J.**


**DAN LEE, CHIEF JUSTICE, DISSENTING:**


¶30. Our principles of domestic law dictate that the husband has a right to a reasonable standard of living. *Tilley v. Tilley*, 610 So. 2d 348, 353 (Miss. 1992). In the instant case, Dr. Calvin Poole ("Poole") has a monthly adjusted income of $4,344.27 with child support payments of $2,000 monthly and lump sum alimony of $1,000 monthly (not to mention the $650 per month child support payable from a previous marriage). If one does the math, Poole is left with a maximum of $1,344 per month on which to live. In denying Poole's Motion for Modification, the chancellor abused her discretion. In order to avoid reducing the amount of child support given to the children, I would suggest that the chancellor, on remand, defer the lump sum alimony payments (or a portion) until the children become self-supporting. Our principles of equity dictate such a result. The result of the chancellor's abuse of discretion and manifest error in the instant case is that the chancellor's "material change in circumstances" analysis regarding the reduction of child support payments is skewed and does not reflect the obvious disparity in Poole's financial condition at the time of his divorce and his present financial circumstance.

¶31. Poole's annual income at the time of his divorce in 1992 was $367,504. He testified that the property agreement he signed in 1992 was based upon this figure. His income tax filings also reflect this figure. This figure is not open to a new "finding" of his annual income in 1993 by the chancellor in the instant case, yet she has done so. Poole's annual income in 1995 at the time of his Motion for Modification was $93,065.76. The difference in Poole's income in 1992 at the time of his divorce and in 1995 is $274,438.24. This is an obvious material change in circumstances under any reading of our law. Poole was making a little more than one-fourth of his 1992 income at the time of his motion for rehearing. The chancellor abused her discretion and was manifestly wrong in her determination that Poole did not experience a material and substantial change in circumstances.

¶32. For the foregoing reasons I would reverse and remand this cause. Accordingly, I respectfully dissent.

**McRAE, J., JOINS THIS OPINION.**