879 So.2d 457 (2004)
Winston HARRIS, Appellant
v.
Janna D. HARRIS, Appellee.
Nos. 2000-CA-00762-COA, 2001-CA-01024-COA, 2001-CA-01457-COA.
Court of Appeals of Mississippi.
February 3, 2004.
Rehearing Denied May 18, 2004.
Certiorari Denied August 5, 2004.
*458 John R. Reeves, attorneys for appellant.
James A. Becker, Susan Latham Steffey, Jackson, attorneys for appellee.
Before McMILLIN, C.J., BRIDGES and THOMAS, JJ.
BRIDGES, J., for the court.
¶ 1. This appeal was consolidated with two other appeals involving the same parties; however, this Court's ruling in this appeal renders all other consolidated appeals moot. The only issues that will be addressed are those contained in the immediate appeal.[1] The first appeal is from a final judgment entered March 28, 2000[2], and the other two appeals are from a May 1, 2001 judgment of the Chancery Court of the First Judicial District of Hinds County styled "JudgmentModifying Former *459 Judgments and Finding Defendant [appellant Janna Harris] in Willful Contempt of Court,"[3] and from a directly related judgment of that same court entered July 25, 2001.[4]
¶ 2. In this appeal, the Court will address not only Winston's four issues but also Janna's four issues stated in her brief/cross-appeal and in so doing the Court will combine certain issues from both appeals for the sake of practicality and clarity. These issues are stated verbatim.

STATEMENT OF THE ISSUES IN WINSTON'S APPEAL
I. WHETHER THE CHANCELLOR ERRED IN NOT ORDERING JANNA TO REFUND WITH INTEREST $50,000 WINSTON HAD PAID HER PURSUANT TO COURT ORDER FOR HER DIVORCE ATTORNEY'S FEES BUT WHICH SHE FAILED TO PAY TO HER DIVORCE ATTORNEYS?
II. WHETHER THE CHANCELLOR ERRED IN NOT HOLDING JANNA IN CIVIL AND CRIMINAL CONTEMPT OF COURT?
III. WHETHER THE CHANCELLOR ERRED IN NOT TERMINATING WINSTON'S ALIMONY OBLIGATION TO JANNA?
IV. WHETHER THE CHANCELLOR ERRED IN NOT ORDERING THE ALIMONY REDUCTION RETROACTIVE TO APRIL 13, 1998, THE DATE THE MOTION TO MODIFY WAS FILED?
JANNA'S CROSS-APPEAL ISSUES
I. THE ISSUE OF JANNA'S PAYMENT OF ATTORNEY'S FEES AND COSTS TO HER FORMER ATTORNEYS, WILLIAM WRIGHT AND ROBERT KING IS NOT PROPERLY BEFORE THIS COURT.
II. THE CHANCELLOR CORRECTLY REFUSED TO HOLD JANNA IN CIVIL OR CRIMINAL CONTEMPT OF COURT REGARDING HER PAYMENT OF ATTORNEY'S FEE.
III. THE CHANCELLOR ERRED IN REDUCING JANNA'S ALIMONY FROM $4,000 PER MONTH TO $1,600 PER MONTH AND REDUCING CHILD SUPPORT FROM $2,020 PER MONTH TO $1,450 PER MONTH AS WINSTON FAILED TO PROVE A MATERIAL CHANGE OF CIRCUMSTANCES WARRANTING ANY REDUCTION, MUCH LESS SUCH A DRASTIC ONE.
IV. THE COURT ERRED IN REDUCING JANNA'S ALIMONY AND TREVOR'S CHILD SUPPORT IN THE FIRST INSTANCE, AND COMPOUNDED THAT ERROR BY MAKING THE REDUCTION RETROACTIVE.
V. THE COURT SHOULD NOT HAVE HEARD WINSTON'S PETITION FOR MODIFICATION AS WINSTON WAS IN SUBSTANTIAL ARREARS IN ALIMONY AND CHILD SUPPORT WHEN HE FILED HIS PETITION FOR MODIFICATION AND ON THE DATE OF THE HEARING ON MODIFICATION. FOR THESE SAME REASONS, THE COURT ERRED IN NOT HOLDING WINSTON IN CONTEMPT OF COURT.
VI. JANNA SHOULD BE AWARDED ATTORNEYS' FEES AND COSTS *460 FOR DEFENDING WINSTON'S MOTIONS AND THIS APPEAL.

FACTS
¶ 3. Winston Harris and Janna Harris were married on June 4, 1984, in Houston, Texas. During their marriage, they had one child, Trevor, who was seven years old at the time of the divorce. Throughout the parties' separation and after their divorce, Janna and Trevor continued to reside in the marital home. After a lengthy trial, the court entered a judgment of divorce, dated November 3, 1994, in favor of Janna, finding Winston guilty of uncondoned adultery and awarding Janna full legal custody, care and control of Trevor.
¶ 4. Pursuant to the final judgment, Janna was awarded $4,000 per month periodic alimony and $1,000 per month child support. Initially, Janna's alimony was to terminate on the occurrence of any of the following: the minor child's emancipation; Janna's employment or remarriage; once Janna and Trevor no longer resided in the marital home; or a court-adjudicated material change in circumstances. Janna was to be solely responsible for the mortgage payment, taxes, and insurance on the marital home, but on the happening of any of the aforementioned events, the equity in the marital home was to be divided between the parties (the home to be apparently sold and equity divided). Both parties filed numerous post-trial motions, complaining about aspects of the final judgment including, but only naming a few, motion for a new trial and/or amendment of findings of fact and conclusions of law, motion for a new trial for consideration and/or to alter or amend judgment, motion for citation for contempt, motion to amend for reconsideration to alter or amend the judgment, motion to strike motion for reconsideration of plaintiff/counter-defendant, motion to recuse judge, and a motion for modification and alternatively for stay pending appeal and other relief.
¶ 5. On January 27, 1995, the chancellor entered an order on Janna's motion for modification, or alternatively, for stay pending appeal and other relief, and on Winston's counter-motion for modification, for sanction and for other relief. In this order, the court clarified the periodic alimony provisions of the final judgment and neither party appealed from this order.
¶ 6. Over the next several years, numerous motions were filed by Janna against Winston for contempt and other relief to obtain child support, alimony, and other awards Winston was required to pay pursuant to the final judgment. Simultaneously, Winston filed numerous motions for modification. There was an opinion and judgment dated September 8, 1995, a judgment dated March 26, 1996, and an order dated November 14, 1996.
¶ 7. On April 13, 1998, Winston again moved for modification of his child support and alimony obligations, claiming a decrease in his income. On April 24, 1998, Winston amended his motion for modification and then filed a second amended motion on February 11, 1999. In response to Winston's motion for modification, the court initially reduced Janna's alimony from $4,000 per month to $2,500 per month, retroactive to August 1, 1999, even though the judgment was entered November, 9, 1999.
¶ 8. On January 19, 2000, in response to more post-trial motions, the chancellor further reduced Winston's obligations. The court reduced Janna's alimony to $1600 per month and her child support to $1,200 per month plus one half of Trevor's private school tuition costs ($250 per month). Additional facts will follow in the opinion.
¶ 9. Janna and Winston now appeal to this Court.

*461 STANDARD OF REVIEW
¶ 10. "In domestic relations cases the scope of review is limited by the substantial evidence/manifest error rule. This Court may reverse a chancellor's findings of fact only when there is no substantial credible evidence in the record to justify his findings. Our scope of review in domestic relations matters is limited under the familiar rule that this Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard." Jundoosing v. Jundoosing, 826 So.2d 85, 88(¶ 10) (Miss.2002) (citations omitted).

ANALYSIS
I. WHETHER THE CHANCELLOR ERRED IN NOT ORDERING JANNA TO REFUND WITH INTEREST $50,000 WINSTON HAD PAID HER PURSUANT TO COURT ORDER FOR HER DIVORCE ATTORNEY'S FEES BUT WHICH SHE FAILED TO PAY TO HER DIVORCE ATTORNEYS.
II. WHETHER THE CHANCELLOR ERRED IN NOT HOLDING JANNA IN CIVIL AND CRIMINAL CONTEMPT OF COURT REGARDING HER PAYMENT OF ATTORNEY'S FEES.
¶ 11. Winston claims that the court should order Janna to refund Winston the money she fraudulently kept and did not turn over to her divorce attorneys as required by the court in the divorce judgment. Winston also claims that Janna should be held in criminal contempt of court for the misappropriation of $50,000 in attorney's fees for her own use and benefit. Further, he claims that Janna should have disclosed to the court that she felt she did not owe or would not pay her divorce attorneys. Instead, she kept all the money for herself and defied the court order by not using the money to pay her divorce attorneys. Further, Winston claims that if Janna is allowed to keep his money with no repercussions she is unjustly enriched with a pure windfall.
¶ 12. To collect under an unjust enrichment or quasi-contract theory, the claimant must show "there is no legal contract but . . . the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another." Estate of Johnson v. Adkins, 513 So.2d 922, 926 (Miss.1987) (quoting Hans v. Hans, 482 So.2d 1117, 1122 (Miss. 1986)).
¶ 13. The final judgment of divorce entered on November 3, 1994, by Chancellor Dillard, awarded Janna the sum of $ 50,000, which represented one half of the attorney's fees and court costs incurred by Janna as a result of Winston's actions at that time. In this judgment, the chancellor ordered that Janna shall pay the following fee outstanding:
1) To Robert W. King, the sum of six thousand one hundred ninety-nine dollars and 92/100 ($ 6,199.92).
2) To Shirley Payne, the sum of two thousand one hundred seventy-five dollars ($ 2,175); and
3) The difference between half the amount paid by Winston to Mr. Moore ($ 50,000) and the sums paid to Robert King ($ 6,199.92) and Shirley Payne ($ 2,175) to William Wright ($ 41,625.08).
¶ 14. These attorneys made a claim but later withdrew or dismissed it and since the record before us gives us no evidence in order to resolve this dilemma this Court has no way of knowing the circumstances surrounding that action. Either the attorneys were paid or they were satisfied in some manner or perhaps *462 they just decided not to pursue the claim. Since these attorneys were not parties to this appeal, the dispute and claim is over with once and for all. "Under traditional appellate procedure, any error not first brought to the attention of the trial court is not preserved for appeal and is thereby waived." Bishop v. State, 771 So.2d 397, 400(¶ 14) (Miss.Ct.App.2000). The result is that it is waived or satisfied therefore, accord and satisfaction applies. It is well established and held that accord and satisfaction consists of four basic requirements. "First, something of value must be offered in full satisfaction of demand, secondly, the offer must be accompanied by acts and a declaration which amount to a condition that if the thing offered is accepted, it is accepted in satisfaction, thirdly, the party offering the thing of value is bound to understand that if he takes it, he takes it subject to the conditions, and fourthly, the party must actually accept the item offered." Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857 So.2d 748, 753-54(¶ 16) (Miss.2003).
¶ 15. We hold that since attorneys who would have had standing and who had the rights to appeal did not join in this appeal, then we have to assume that there was accord and satisfaction or they simply waived any such rights, and they, nor anyone acting for them, have no standing here.
¶ 16. It is interesting that later on in the case, nearly six years later, (and allegedly at the urging of Winston's most recent attorney) this issue was brought up again before the second chancellor assigned to this case, Chancellor Singletary. William R. Wright and Robert W. King sought to intervene in Winston's contempt proceeding against Janna. On August 10, 1999, a hearing was conducted regarding the motion to intervene for the purpose of obtaining attorney's fees from Janna. On November 9, 1999, in his opinion and order, the chancellor denied their motions to intervene and neither Mr. Wright nor Mr. King appealed from the chancellor's decision. The failure of the attorneys to appeal further strengthens the view regarding their standing and their rights to appeal. The attorneys had a right to appeal and they failed to pursue that cause of action. If those attorneys had joined in this appeal, then one of the parties may have had a claim, giving Winston standing here.
¶ 17. For the aforementioned reasons, we find that Janna Harris was not unjustly enriched and also that Winston has no standing to appeal for the attorneys involved. See Mauck v. Columbus Hotel Co., 741 So.2d 259, 264 (¶¶ 12-13) (Miss. 1999); Miss.Code. Ann. § 11-3-37 (Rev. 2002).

III. WHETHER THE CHANCELLOR ERRED IN NOT TERMINATING WINSTON'S ALIMONY OBLIGATION TO JANNA.
¶ 18. Winston argues that the chancellor erred in not further reducing or terminating his alimony obligations to Janna because of the substantial increase in Janna's income subsequent to the divorce proceedings and Winston's substantial income decrease. Janna claims that the chancellor erred in reducing alimony and child support as Winston failed to prove a material change in circumstances warranting any reduction.
¶ 19. The law in Mississippi is well settled; alimony and child support obligations are subject to modification only where there has been a material change in circumstances not reasonably anticipated when the divorce decree was entered. See Yancey v. Yancey, 752 So.2d 1006, 1009-10(¶ 9) (Miss.1999).
*463 ¶ 20. After reviewing the record, and in accordance with the standard of review stated above, we find that the chancellor did not err in reducing Winston's support obligations. At the August 1999 hearing, there was evidence presented that indicated that Winston undertook a new job approximately a year and a half before that date, after being fired from his previous employment. In his order, the chancellor found that Winston's present annual income was approximately $100,000: $80,000 payable in salary and another amount as incentive pay, based on his performance, but which is a minimum of $20,000. The chancellor also found that Janna had improved her circumstances since the final judgment was entered. At the time of the final judgment, Janna did not work outside the home, but she is now professionally trained and operates a successful counseling and therapy practice.
¶ 21. Upon these findings, the chancellor concluded that there had been a material change in circumstances since the entry of the final judgment. We hold that the chancellor did not abuse his discretion in finding a material change in circumstances, and therefore, reducing Janna's alimony. This issue is without merit.
¶ 22. On a final note, the chancellor found that Winston had been less than forthcoming with information concerning his financial information and income. In the case of Smith v. Smith, 429 So.2d 588, 588-89 (Miss.1983), the Mississippi Supreme Court held that a husband's attempts to conceal income, as Winston has apparently attempted to do here, should not be condoned and the trial court should be reversed and the court should consider testimony concerning Winston's actual income.

IV. WHETHER THE CHANCELLOR ERRED IN NOT ORDERING THE ALIMONY REDUCTION RETROACTIVE.
¶ 23. Winston contends that the chancellor erred in not ordering the alimony reduction retroactive to April 13, 1998, the date Winston filed his motion to modify instead of the date given, August 1, 1999. Janna claims that given that the court reduced her alimony award, the reduction should have been made effective no earlier than the date of the order, November 9, 1999.
¶ 24. On this point, the court certainly had authority to make the modification effective the date of the petition. See McHann v. McHann, 383 So.2d 823, 826 (Miss.1980). However, that authority was discretionary and we perceive no basis for a conclusion that the chancery court abused its discretion.

V. WHETHER THE CHANCELLOR ERRED IN HEARING WINSTON'S PETITION FOR MODIFICATION.
¶ 25. Janna asserts that the chancellor should not have heard Winston's petition for modification as Winston was in substantial arrears in alimony and child support when he filed his petition for modification. And for these same reasons, Janna claims that the chancellor erred in not holding Winston in contempt of court.
¶ 26. Winston initially moved to modify his alimony and child support obligations on April 13, 1998. At the time of filing his motion, Winston was in arrears for child support and alimony of over $9,000. Less than a month after filing the petition, Winston was still in substantial arrears of over $10,000. The court, in April 1999, found Winston in contempt of court for failing to meet his obligations.
¶ 27. It is well settled in Mississippi that modification should not be allowed where the petitioner is not in the proper position to seek relief from the court. "He *464 who doeth fraud, may not borrow the hands of the chancellor to draw equity from a source his own hands hath polluted." Billy G. Bridges & James W. Shelson, Griffith Mississippi Chancery Practice § 42 (2000 ed.), citing Thigpen v. Kennedy, 238 So.2d 744 (Miss.1970) (equitable maxim that a litigant must come into equity with clean hands). No person as a complaining party can have the aid of a court of equity when his conduct with respect to the matter in question has been characterized by willful inequity. O'Neill v. O'Neill, 551 So.2d 228, 233 (Miss.1989).
¶ 28. The Mississippi Supreme Court stated that:
[A] former husband may not petition for modification of original divorce decree providing for alimony and child support payments without showing either that he has performed it or that his performance has been wholly impossible.
Hooker v. Hooker, 205 So.2d 276, 278 (Miss.1967); see, e.g., Taylor v. Taylor, 348 So.2d 1341 (Miss.1977) (alimony should not be modified without a showing that the petitioner had fully performed or that his performance was "wholly impossible," citing Kincaid v. Kincaid, 213 Miss. 451, 57 So.2d 263 (1952)); James v. James, 724 So.2d 1098, 1103-1104 (¶¶ 21-22) (Miss. 1998) (citing several cases for the proposition that one must have fully performed or show that full performance was impossible and must make such proof with particularity and not in general terms); Gambrell v. Gambrell, 644 So.2d 435, 441-442 (Miss. 1994) (chancellor denied modification of child support decree where father was $20,000 in arrears).
¶ 29. In the case of Gregg v. Montgomery, 587 So.2d 928, 932 (Miss.1991), the Mississippi Supreme Court further found that because the record reflected that the husband in this case, Donnie, failed to offer substantial evidence (particular and not general), to support that he was financially unable to comply with the divorce decree so as to avoid paying arrears in child support and alimony; that he had other bills to pay would not justify default and, he held a well-paying job after August 1986, that the findings made by the chancellor that Donnie should pay child support arrearage was correct.
¶ 30. In Poole v. Poole, the court became even more analytical, finding that Mr. Poole having an $11,867 municipal bond, a life insurance policy with a net cash value of $6,000, a paid-for $19,000 automobile, and $155,000 in retirement funds, seemed to be enjoying the exact same lifestyle at the time of the hearing as he had prior to the divorce. Poole v. Poole, 701 So.2d 813, 818(¶ 22) (Miss.1997). The court in Poole, held that the lower court correctly found that Mr. Poole failed to demonstrate a material change in circumstances affecting his ability to pay child support. Id. In the present case, Winston was in substantial arrears when he first moved to modify child support and alimony at the time of the hearing on the motion for modification. By the time of the hearing, Winston, by his own admission, owed $36,000 in alimony and over $5,300 in child support. This was in spite of the fact that the court told Winston, during the April 1999 hearing, to maintain his performance bond payments and keep them current.
¶ 31. We are reversing on this issue and remanding for the chancellor to reconsider this matter by hearing testimony and making appropriate findings in connection therewith.
¶ 32. Upon remand and rehearing of this matter, the chancellor should consider allowing testimony from Winston concerning the alleged concealment of certain monies from the sale of his company, and from the sale of a home, and having sums of income greater than those at the time of *465 the trial on the merits, as well as other income which he used to contribute to his voluntary retirement account, purchase season football tickets, pay American Express, and make a donation to the symphony, as allegedly referred to in Janna's pleadings as well as in her brief. For Winston to be entitled to an action of modification, it must have been "wholly impossible" for him to meet his obligations, something he has yet to show.
¶ 33. Following the reasoning in Brand v. Brand, 482 So.2d 236, 237-38 (Miss. 1986), should the chancellor find that Winston should be required to pay any arrears for alimony and child support then the chancellor should calculate all sums owed and require that same be paid to Janna as required by law. See also Fuhr v. Fuhr, 818 So.2d 1237, 1239(¶ 8) (Miss.Ct.App. 2002); Tanner v. Roland, 598 So.2d 783, 786 (Miss.1992).
¶ 34. We find that there is strong evidence to find that Winston may have been in contempt of court, that he is in substantial arrears in both alimony and child support, as well as, being guilty of other violations alleged by Janna. Consequently, we find that Winston has "unclean hands" and should not have been allowed to move forward with his motion for modification.

VI. WHETHER JANNA SHOULD BE AWARDED ATTORNEY'S FEES AND COSTS FOR DEFENDING WINSTON'S MOTIONS AND THIS APPEAL.
¶ 35. Janna claims that she does not have the ability to pay her legal fees and costs. Janna also argues that the trial court erred in requiring her to pay for additional designations to the record on appeal, because Winston, as the appellant, designated substantially less than the entire record on appeal.
An award of attorney's fees in divorce cases is left to the discretion of the chancellor, assuming he follows the appropriate standards. The award of court costs is likewise entrusted to the sound discretion of the chancellor. The Mississippi Supreme Court has held that when a party is able to pay attorney's fees, an award of attorney's fees is not appropriate. However, where the record shows an inability to pay and a disparity in relative financial positions of the parties, there is no error in awarding attorney's fees.
Bates v. Bates, 755 So.2d 478, 482(¶ 11) (Miss.Ct.App.1999) (citations omitted). Generally, unless the party who requests to be awarded an attorney's fee can establish her inability to pay, the trial court ought not award that party an attorney's fee. Jones v. Starr, 586 So.2d 788, 792 (Miss.1991); Martin v. Martin, 566 So.2d 704, 707 (Miss.1990).
¶ 36. After reviewing the record, we found that Janna did seek attorney's fees in her response to King and Spencer's motion to intervene, but we do not find any testimony or other evidence to support that request nor did we find that the chancellor made any findings in connection therewith or order the same, a factor necessary in making such an award. McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). It is also noteworthy that during oral arguments regarding this case, the Court asked for the location of the request for attorney's fees, and at best, the attorney stated that she was not sure but that it was in the record somewhere.
¶ 37. Also this Court, in Lipsey v. Lipsey, 755 So.2d 564, 568(¶ 18) (Miss.Ct.App. 2000) (quoting Newell v. Hinton, 556 So.2d 1037, 1043 (Miss.1990)), stated that "[a]n award of attorney's fees in a contempt case is proper . . . and the award of fees is largely entrusted to the sound discretion of the chancellor." In contempt actions, "even if the contempt deals with domestic relations matters, a chancellor has the authority to make the prevailing party whole *466 by awarding attorney's fees without regard to the ability to pay." Creel v. Cornacchione, 831 So.2d 1179, 1183-84(¶ 18) (Miss.Ct.App.2002).
¶ 38. Upon a rehearing of this matter, the chancellor should, in the event Winston is found in contempt, award appropriate attorney's fees pursuant to law as provided in Lipsey. Additionally, the chancellor should, in the event Janna prevails in such hearing, consider awarding her costs, including any sustained by her as a result of being required to provide additions to the designation of the record supplemental to her appeal in the defense of her claim. See M.R.A.P. 11.
¶ 39. Therefore, we affirm as to issues I, II, III, and IV on direct appeal and I, II, III, and IV on cross-appeal and reverse and remand as to issues V and VI on cross-appeal. All other issues in this consolidated appeal are rendered moot by the resolution of those issues adjudicated herein.
¶ 40. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IN CAUSE # 2000-CA-762-COA IS AFFIRMED IN PART AS TO ISSUES I, II, III, AND IV ON DIRECT APPEAL AND REVERSED AND REMANDED IN PART AS TO ISSUES V AND VI ON CROSS-APPEAL CONSISTENT WITH THIS OPINION. THE JUDGMENTS OF THE HINDS COUNTY CHANCERY COURT ARE RENDERED MOOT IN 2001-CA-1024-COA AND 2001-CA-1457-COA. COSTS ARE ASSESSED AGAINST THE APPELLANT.
KING, P.J., THOMAS, LEE, AND MYERS, JJ., CONCUR. McMILLIN, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., IRVING, CHANDLER, AND GRIFFIS, JJ.
McMILLIN, C.J., CONCURRING IN PART, DISSENTING IN PART.
¶ 41. I concur with the result reached by the majority as to all issues except the matter of the $50,000 payment by Mr. Harris ordered by the chancellor for the explicit purpose of permitting Mrs. Harris to defray certain allegedly outstanding legal fees owed by her in connection with her representation in the divorce. The majority concludes that Mr. Harris, after having paid the $50,000 as ordered, lacks standing to assert a claim that Mrs. Harris subsequently failed to pay the money to her attorneys as specifically directed by the judgment. I disagree. It would be my view that (a) the acceptance by Mrs. Harris of the specified sum and (b) her subsequent failure to utilize the sum to defray the very expense that was the basis for the award combine to raise a legitimate issue of unjust enrichment that Mr. Harris had standing to assert.
¶ 42. That claim of unjust enrichment is an entirely different issue from the one sought to be asserted by Mrs. Harris's former attorneys when they attempted to intervene in this proceeding to compel her to pay the money to them but were turned away by the chancellor. It is entirely possible, for any number of reasons, that Mrs. Harris might have a legitimate defense to the claims for compensation asserted by her former attorneys that would permit her to avoid payment to them, even had they been successful in their efforts to intervene in this proceeding. However, if the case ultimately proved to be that the fees were not owed, then there would have been no basis in law or in equity for her to assert the purported obligation as the basis for an award of attorney's fees in her divorce proceeding.
¶ 43. I would reverse and remand on that issue with directions for the chancellor *467 to determine what part of the $50,000 advanced by Mr. Harris was actually expended in satisfaction of the specific attorney's fees enumerated in the chancellor's order and to compel the return to Mr. Harris of any part of the $50,000 not so expended by Mrs. Harris under equitable principles of unjust enrichment. ¶ 43. Though Mr. Harris's pleadings did not, in so many words, assert a claim based on unjust enrichment, I believe this to be an appropriate resolution of the underlying facts of this case based on Rule 54(c) of the Mississippi Rules of Civil Procedure, which provides, in part, that
every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled by the proof and which is within the jurisdiction of the court to grant, even if the party has not demanded such relief in his pleadings.. . .
M.R.C.P. 54(c).
SOUTHWICK, P.J., IRVING, CHANDLER, AND GRIFFIS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] There are references in the record to many of the pleadings being motions for contempt, cross-motions to said motions, motions for modifications and cross motions thereto. Once a case falls within the Mississippi Rules of Civil Procedure, the terminology for pleading should comply with those rules. Rule 81(d)(1)(2)(3) applies in instances where such causes of action are filed. The comment to Rule 81(d)(3) clearly provides that such actions should be commenced by complaint or petition only and that actions by "motion" are not intended. Rule 81(f) provides for the applicable terminology of pleadings filed in the cases referred to in this footnote. Said pleadings should have been petitions, complaints, counterclaims, or cross-claims, whichever is appropriate. Additionally, there are references to motions to reconsider which are not provided for under the rules, rather Rule 59 provides for new trials in actions without a jury where the judge may reopen the judgment, take additional testimony, amend findings of fact and conclusions of law, or make new findings and conclusions and direct the entry of new judgment. We will continue to refer to the actions taken by the parties herein as they appear in the record to avoid confusion.
[2] Case No.2000-CA-00762.
[3] Case No.2001-CA-01024.
[4] Case No.2001-CA-01457.